1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10

11   SPIRO KAMAR, et al.,                )   CASE NO.  CV 07-2252  AHM (AJWx)
                                         )
12                   Plaintiffs,         )
                                         )   ORDER GRANTING IN PART AND
13          v.                           )   DENYING IN PART DEFENDANT
                                         )   RADIOSHACK CORPORATION'S
14   RADIOSHACK CORPORATION,             )   MOTION FOR JUDGMENT ON THE
     et al.,                             )   PLEADINGS
15                                       )
                     Defendants.         )
16   _____  )

17

18                              **I.**

19                       **INTRODUCTION**

20          This matter comes before the Court on Defendant RadioShack

21   Corporation's ("RadioShack") motion for judgment on the pleadings.  RadioShack

22   is a chain of consumer electronic stores.  Plaintiffs are former employees of

23   RadioShack who worked at various stores in Southern California.  They seek

24   monetary and injunctive relief for alleged wage and hour violations.  On March 1,

25   2007, they filed this putative class action in Los Angeles Superior Court.

26   RadioShack removed this action to federal court on April 5, 2007 and filed this

27   motion on January 14, 2008.  RadioShack seeks dismissal of Plaintiffs' claim for

28   unpaid split shift premiums and reporting time pay under California wage and

hour regulations; Plaintiffs' claims under California Labor Code sections 204 and 210; and their claim for civil penalties under section 558 of the California Labor Code.

For the reasons stated below, the Court DENIES the motion as to Plaintiffs' claim for split shift premiums and reporting time pay and GRANTS the motion as to civil penalties under Labor Code section 558.

## II.
## FACTUAL BACKGROUND

Plaintiffs allege that RadioShack and co-Defendant Tandy Corporation failed to pay "split shift premiums" and reporting time pay in violation of California law.  Compl. ¶¶ 19-20.  As the California Supreme Court has stated,

> when an employee is required to report for work and does report, but is not put to work or is given less than half the scheduled work, "the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay...." [Citation.]  When an employee is required to work a "split shift" (is scheduled for two nonconsecutive shifts in the same day), the employer must pay the employee one additional hour of wages. [Citation.]

*Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1111 (Cal. 2007). These requirements are set forth in numerous Industrial Welfare Commission (IWC) wage orders, including the one that applies in this case, Wage Order 4-2001, codified at 8 Cal. Code Regs. §§ 11040.

Plaintiffs charge that Defendants forced nonexempt employees to attend store meetings but failed to pay them reporting time wages and that Defendants scheduled interruptions of non-paid, non-working periods without paying a split

shift premium. *Id.* ¶ 20(a)-(c). Furthermore, Plaintiffs allege, Defendants failed to pay their nonexempt employees for all of their services and time worked, such as by requiring employees to make nightly bank deposits "off the clock" and by not paying overtime compensation. *Id.* ¶ 20(d), (f), (g). Finally, Plaintiffs allege that Defendants failed to timely pay earned wages upon discharge. *Id.* ¶ 20(e).

The complaint contains two causes of action. The first cause of action is entitled "For Nonpayment of Wages, Violation of Labor Code Sections 204, 210, Against All Defendants.[1] Labor Code Section 204(a) provides that all wages, other than those mentioned in sections 201, 202, 204.1 or 204.2, are due and payable twice during each month. Labor Code section 210 imposes a penalty for failure to pay the wages prescribed by section 204 and certain other statutes. The second cause of action is for unfair business practices under California Business and Professions Code § 17200 *et seq.* based on the alleged wage and hour violations. Compl. ¶¶ 36-43.

RadioShack now seeks a judgment that (1) no private right of action exists for Plaintiffs to recover split shift premiums and reporting time pay; (2) no private right of action exists to recover penalties for violation of Labor Code section 204;[2] and (3) no private right of action exists to recover section 558

---

[1] As RadioShack acknowledges, despite referring to only two Labor Code provisions in the title, Plaintiffs specifically incorporate a number of additional claims into their first cause of action: unpaid wages under Labor Code sections 201 and 1198; failure to timely pay wages under Labor Code sections 201-203; unpaid split shift premiums and reporting time pay required by the Industrial Welfare Commission's (IWC) Wage Order 4-2001, codified at 8 Cal. Code Regs. §§ 11040(4C) and (5A); and monetary penalties under Labor Code section 558. *See* Mot. at 3; Compl. ¶¶ 29-34.

[2] Plaintiffs' sole factual allegation regarding timeliness of payment is that Defendants failed to timely pay wages at time of discharge. Compl. ¶ 20(f). Nowhere do they allege failure to pay wages twice per month. Accordingly, the Court need not address Plaintiffs' claimed right to recover for violations of Section

1  monetary penalties for violations of an IWC wage order.[3]

2

3                                    **III.**

4                          **LEGAL STANDARD**

5          After the pleadings are closed but within such time as not to delay the trial,

6  any party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  The

7  standard applied on a Rule 12(c) motion is essentially similar to that applied on

8  Rule 12(b)(6) motions; a judgment on the pleadings is appropriate when, even if

9  all the allegations in the complaint are true, the moving party is entitled to

10 judgment as a matter of law.  *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430

11 F.3d 1036, 1042 (9th Cir. 2005).  When determining a motion for judgment on the

12 pleadings, the Court should assume the allegations in the Complaint to be true and

13 construe them in the light most favorable to the plaintiff, and the movant must

14 clearly establish that no material issue of fact remains to be resolved.

15 *McGlinchey v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  However,

16 "conclusory allegations without more are insufficient to defeat a motion [for

17 judgment on the pleadings]."  *Id.*

18

19                                    **IV.**

20                          **DISCUSSION**

21         The issues before the Court are whether a private right of action exists for

22 Plaintiffs to recover split shift premiums and reporting time pay, whether a private

23 right of action exists to recover Labor Code Section 558 monetary penalties for

24 _____

25 204.

26

27 [3]RadioShack does not dispute that a private right of action exists to bring claims for
   unpaid wages and overtime and failure to timely pay wages upon discharge,
28 pursuant to Labor Code sections 201, 202, 203, and 1194.

violations of an IWC wage order, and how, if at all, the Private Attorneys General Act limits efforts to recover such penalties in court.

Because this motion is focused on Plaintiffs' claims arising from RadioShack's split shift and reporting time practices, an overview of the relevant IWC regulations is in order.

## A.    The Applicable IWC Regulations

From its inception in 1913, the IWC has been given broad authority to establish labor standards throughout the state of California. *See Industrial Welfare Comm'n v. Superior Court of Kern County*, 27 Cal.3d 690, 701-02 (Cal. 1980) (calling the IWC's rule-making a "quasi-legislative endeavor").  Pursuant to its authority under section 1173 of the California Labor Code, the IWC has promulgated thirteen orders governing specific industries (Cal. Code Regs., tit. 8, §§ 11010, 11020, 11030, 11040, 11050, 11060, 11070, 11080, 11090, 11100, 11110, 11120, 11130) and three orders covering designated occupations (Cal. Code Regs., tit. 8, §§ 11140, 11150, 11160), as well as an order applicable to "miscellaneous employees" (Cal. Code Regs., tit. 8, § 11170) and a general minimum wage order (Cal. Code Regs., tit. 8, § 11000).  Although the IWC was de-funded by the California Legislature effective July 1, 2004, its wage orders are still in effect.  *Bearden v. U.S. Borax, Inc.*, 138 Cal.App.4th 429, 434 n. 2 (Cal. Ct. App. 2006).

IWC Wage Order 4-2001 is the order at issue here.  It regulates wages, hours, and working conditions in professional, technical, clerical, mechanical, and similar occupations.  *See* Cal. Code Regs., tit. 8, § 11040 (2001).  The substantive standards are set forth beginning in Subsection 3, which governs "Hours and Days of Work."

Subsection 4 of the order is entitled "Minimum Wages."  Subsection 4(C) provides:

> When an employee works a split shift, one (1) hour's pay at the
> minimum wage shall be paid in addition to the minimum wage for
> that workday, except when the employee resides at the place of
> employment.

Cal. Code Regs., tit. 8, § 11040 (4)(C).  A "split shift" means "a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods."  Cal. Code Regs., tit. 8, § 11040 (2)(Q).

> Subsection 5 is entitled "Reporting Time Pay."  It reads, in pertinent part:
> Each workday an employee is required to report for work and does
> report, but is not put to work or is furnished less than half said
> employee's usual or scheduled day's work, the employee shall be paid
> for half the usual or scheduled day's work, but in no event for less
> than two (2) hours nor more than four (4) hours, at the employee's
> regular rate of pay, which shall not be less than the minimum wage.

Cal. Code Regs., tit. 8, § 11040 (5)(A).

Split shift premiums and reporting time pay requirements appear to have been in effect for some industries or occupations since 1957.  *See Kerr's Catering Service v. Dep't of Industrial Relations*, 57 Cal.2d 319, 324-25 (Cal. 1962) (noting that Order No. 5-57, regulating the public housekeeping industry, established one dollar per day extra for split shift workers and two dollars for reporting for work if work is not available).[4]  For the professional, clerical and technical occupations,

---

[4]*See also California Hotel and Motel Ass'n v. Industrial Welfare Comn'n*, 146 Cal.Rptr. 909, 913 (Cal.App.,1978) (noting that Wage Order 5-76 established premium pay for split shifts in the public housekeeping industry), *rev'd for other reasons*, *California Hotel & Motel Ass'n. v. Industrial Welfare Com.*, 25 Cal.3d 200 (Cal. 1979); *U. S. Steel Corp. v. Industrial Welfare Comm'n of State of Cal.*, 473 F.Supp. 537, 538 (N.D. Cal. 1979) (noting that Wage Order 1-76 regulated hours and days of work, minimum wages, reporting time pay, and other aspects of

these requirements have been in Wage Order 4 at least since 1998 (the date of the oldest version of Wage Order 4 on the IWC's website).

California courts have consistently upheld IWC wage orders against challenges by employer groups seeking to prevent their enforcement.[5] For example, in 1980 the Court of Appeal upheld the reporting time pay regulation as "an appropriate device for enforcing proper scheduling consistent with maximum hours and minimum pay requirements." *California Manufacturers Ass'n. v. Industrial Welfare Comm'n*, 109 Cal.App.3d 95, 112 (Cal. App. 4 Dist. 1980). Because labor statutes are remedial statutes that must be liberally construed to promote the protection of employees, "[r]egulations and orders of the Industrial Welfare Commission are presumed to be reasonable and lawful." *Industrial Welfare Comm'n v. Superior Court of Kern County*, 27 Cal.3d 690, 702-03 (Cal. 1980) (noting also the quasi-legislative status of the regulations); *see also* Cal. Labor Code § 1200 (same). Based on these principles, the Ninth Circuit has stated that IWC wage orders are "quasi-legislative regulations that are to be interpreted in the same manner as statutes." *Watkins v. Ameripride Services*, 375 F.3d 821, 825 (9th Cir. 2004).

**B.     There is a Private Right of Action to Recover Split Shift Premiums and Reporting Time Pay**

IWC Wage Order 4-2001 does not explicitly provide for a private right of action to recover split shift premiums and reporting time. Nor does any provision

_____

employment in the manufacturing industry).

[5]*See Henning v. Industrial Welfare Comm'n*, 46 Cal.3d 1262, 1277 (Cal. 1988) (noting that article XIV, section 1 of the California Constitution authorizes the Legislature to provide for minimum wages and for the general welfare of employees and to delegate its power in this regard to the IWC); *Calif. Drive-In Restaurant Ass'n v. Clark*, 22 Cal.2d 287, 302 (Cal. 1943) (upholding wage order provision barring crediting of tips toward minimum wage in restaurants).

in the California Labor Code.  Plaintiffs nevertheless contend that a private right of action to recover these monies as wages is available pursuant to Labor Code sections 204 and 218 and also pursuant to the California Supreme Court's recent decision in *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1084 (Cal. 2007).[6]  RadioShack's primary argument is that no private right of action exists to recover these wages in court, because the Labor Code provides a comprehensive administrative remedy and there is no affirmative provision for a judicial remedy to recover unpaid wages in the Labor Code.  The Court disagrees.

The parties acknowledge that there is no controlling authority on the question of whether a private right of action exists for recovering split shift premiums and reporting time pay.  In such circumstances, the Court must predict how the California Supreme Court would resolve the question.  In doing so the Court is bound by California rules of statutory interpretation.  *See Westlands Water Dist. v. Amoco Chemical Co.*, 953 F.2d 1109, 1111 (9th Cir. 1992)*; In re Anderson*, 824 F.2d 754, 756 (9th Cir. 1987).  The California Supreme Court has established the following principles of construction.

> Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory

---

[6] Given that the right to semimonthly payments is not at issue here, the Court will analyze whether a judicial remedy is implied in Labor Code sections 218 and 1194, not Section 204.

1    sections relating to the same subject must be harmonized, both
2    internally and with each other, to the extent possible.  Where
3    uncertainty exists consideration should be given to the consequences
4    that will flow from a particular interpretation.  Both the legislative
5    history of the statute and the wider historical circumstances of its
6    enactment may be considered in ascertaining the legislative intent.

7  *Dyna-Med, Inc. v. Fair Employment & Housing Comm'n*, 43 Cal.3d 1379, 1386-

8  87 (Cal. 1987) (citations omitted).  This Court is also mindful of the principle that

9  statutes governing conditions of employment are to be construed broadly in favor

10  of protecting employees.  *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th

11  1094, 1103 (Cal. 2007) (citations omitted).

12

13       1.  <u>Split shift premiums and reporting time pay are premium wages required</u>

14  <u>by law.</u>

15       RadioShack concedes that split shift premiums and reporting time pay are

16  premium wages, in light of *Murphy v. Kenneth Cole Productions, Inc*.[7]  In

17  *Murphy*, the California Supreme Court held, among other things, that payments

18  for meal and rest breaks mandated by section 226.7 of the Labor Code are wages.

19  *Murphy*, 40 Cal. 4th at 1102.  Section 226.7 requires employers who failed to

20  provide the meal and rest period mandated by the IWC to pay an additional hour

21  of pay.  *Id.*  The Court of Appeal had held that the additional hour's pay

22

23  ────────────────

24  [7]Premium wages are payments required by law.  According to the Division of Labor

25  Standards Enforcement ("DLSE"): "In *Murphy v. Kenneth Cole* (2007) 2007 WL
     1111223, the Court indicated that meal period pay, rest period pay, reporting time

26  pay and split shift premium are all forms of pay similar to overtime premium.
     Because these payments are in the nature of premiums required by law, they are not

27  included in computing the regular rate of pay on the same basis that overtime
     premium is not included in regular rate calculations."  DLSE Enforcement Policies

28  and Interpretations Manual (Apr. 2008), at § 49.1.2.4.

constituted a penalty, which was subject to a one-year statute of limitations, rather than a wage, which is subject to a three-year statute. *Id.* at 1112. In reversing that ruling and holding that the meal and rest break payment constituted wages, the Supreme Court reiterated several of its previous holdings that "statutes governing conditions of employment are to be construed broadly in favor of protecting employees." *Id.* at 1103 (citations deleted). The Court emphasized that Labor Code section 200(a) defines "wages" broadly as "all amounts for labor performed by employees of every description . . . ." *Id.* It then cited multiple examples of remedies that are intended to serve both as penalties and as compensation - - what it called "dual-purpose" remedies - - such as overtime pay, split shift premiums and reporting time pay. The Supreme Court stated,

> Overtime pay is only one such example of a dual-purpose remedy that is primarily intended to compensate employees, but also has a corollary purpose of shaping employer conduct. Reporting-time and split-shift pay serve a similar dual function. (Citation.) . . .
>
> In addition to compensating employees, reporting-time and split-shift pay provisions "encourag[e] proper notice and scheduling ... [and are] an appropriate device for enforcing proper scheduling consistent with maximum hours and minimum pay requirements." (Citation.) As with overtime, reporting-time and split-shift pay provisions do not become penalties for statute of limitations purposes simply because they seek to shape employer conduct in addition to compensating employees. (*See Caliber Bodyworks, Inc. v. Superior Court, supra*, 134 Cal.App.4th at pp. 377, 381, 36 Cal.Rptr.3d 31 [split-shift pay is wages]; *Huntington Memorial Hospital v. Superior Court, supra*, 131 Cal.App.4th at pp. 909-910, 32 Cal.Rptr.3d 373 [reporting-time pay is compensation].)

*Id.* at 1111-12.

Although *Murphy* did not involve whether there is a private right of action to enforce IWC wage orders such as Wage Order 4-2001, the decision is instructive, because the very premise of the *Murphy* court was that meal and rest break premiums are "forms of wages" just like overtime and split shift premiums and reporting time.  This is sufficient to convince this Court that the California Supreme Court would hold that split shift premiums and reporting time pay are indeed wages mandated by law.

2. <u>The California Labor Code provides for administrative and judicial resolution of unpaid wage claims based on statute or contract.</u>

Time and again, and most recently in *Murphy* (40 Cal. 4th at 1115), the California Supreme Court has explained that a Californian seeking to recover contractual or statutorily-mandated wages has *two* options, one judicial and one administrative.  As the Supreme Court explained in *Cuadra v. Millan*, 17 Cal. 4th 855, 858 (Cal. 1998):

> If an employer fails to pay wages in the amount, time or manner required by contract or by statute, the employee has two principal options. The employee may seek *judicial* relief by filing an ordinary civil action against the employer for breach of contract and/or for the wages prescribed by statute. (§§ 218, 1194.) Or the employee may seek *administrative* relief by filing a wage claim with the commissioner pursuant to a special statutory scheme codified in sections 98 to 98.8. The latter option was added by legislation enacted in 1976 (Stats. 1976, ch. 1190, §§ 4-11, pp. 5368-5371) and is commonly known as the "Berman" hearing procedure after the name of its sponsor.

*Cuadra*, 17 Cal.4th at 858 (emphasis in original).  *See also Reynolds v. Bement*, 36 Cal.4th 1075, 1084 (Cal. 2005); *Smith v. Rae-Venter Law Group*, 29 Cal.4th

345, 350 (Cal. 2002); *Dunlap v. Superior Court*, 142 Cal.App.4th 330, 336 (Cal. Ct. App. 2006); *Sampson v. Parking Serv. 2000 Com, Inc.*, 117 Cal.App.4th 212, 220 (Cal. Ct. App. 2004).

The Berman hearing procedure referenced above is conducted by the California Division of Labor Standards Enforcement (DLSE).  "[It] is designed to provide a speedy, informal, and affordable method of resolving wage claims." *Cuadra,* 17 Cal.4th at 858.  Described another way, the DLSE remedy is meant "to avoid recourse to costly and time-consuming judicial proceedings in *all but the most complex of wage claims*." *Id.* at 869 (emphasis added).

RadioShack suggests that, by creating a cheaper and faster alternative to the courts, the Legislature downright eliminated direct recourse to the courts.  This is contrary to the legislative history of Labor Code section 98, which was intended to augment the ways in which the Labor Commissioner could pursue claims on behalf of workers.[8]  Section 98 was "proposed to 'expedite the handling of disputed wage claims by the Labor Commissioner's office and [] discourage obstruction and stalling tactics engaged in by some employers knowing that the only recourse available to the Labor Commissioner to enforce a valid claim is to sue in the Superior Court."  Department of Industrial Relations, Enrolled Bill Report on Assem. Bill No. 1522 (1975-1976 Reg. Sess.), Aug. 16, 1976, p. 1., *cited in Cuadra v. Bradshaw*, 62 Cal.Rptr.2d 102, 105 (Cal. Ct. App. 1997), *aff'd, Cuadra v. Millan*, 17 Cal.4th 855 (Cal. 1998).  Once an employee files an administrative complaint, the Labor Commissioner has three alternatives: conduct

---

[8]Section 98 states, in relevant part: "The Labor Commissioner shall have the authority to investigate employee complaints. The Labor Commissioner may provide for a hearing in any action to recover wages, penalties, and other demands for compensation properly before the division or the Labor Commissioner, including orders of the Industrial Welfare Commission, and shall determine all matters arising under his or her jurisdiction." Cal. Labor Code § 98(a).

1    a Berman hearing, file a civil action, or take no further action.  *Sampson*, 117

2    Cal.App.4th at 218 (citing Cal. Labor Code §§ 98, 98.2, 98.3).

3         Given this history, there is no basis to infer from what RadioShack calls

4    DLSE's "comprehensive administrative enforcement power" a general legislative

5    intent to preclude wage claimants from seeking judicial relief.  Indeed,

6    RadioShack has pointed to no evidence (and the Court is aware of none) that the

7    Legislature intended the administrative remedy to be the exclusive scheme for

8    enforcing all of the state's wage laws.

9         Here, the question is not whether the DLSE's enforcement system is

10   exclusive (it certainly is not), but whether workers' rights to wages mandated not

11   directly by statute or contract but by the Industrial Welfare Commission may be

12   enforced only through the Berman hearing process or a lawsuit filed by the DLSE.

13   Does an employee's right to judicial relief, which the California Supreme Court

14   referred to in many of its previous decisions citing Labor Code sections 218 and

15   1194, encompass split shift premiums and reporting time pay?  For the reasons set

16   forth in the next section, this Court concludes that the California Supreme Court

17   would answer "yes."

18

19        3. Sections 218 and 1194 of the Labor Code provide an implied private

20   right  of action to recover split shift premiums and reporting time pay.

21        As a general rule, whether there is a private right of action is primarily an

22   issue of legislative intent.  *Animal Legal Defense Fund v. Mendes*, 160

23   Cal.App.4th 136, 142 (Cal. Ct. App. 2008).  "If the Legislature intended a private

24   right of action. . . [or] intended there be no private right of action, that usually

25   ends the inquiry.  If [the court] determine[s] the Legislature expressed no intent on

26   the matter either way, directly or impliedly, there is no private right of action. . . ."

27   *Id.* (citing *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287, 305

28   (Cal. 1988).  "Courts will liberally construe [ ] wage statutes, but they cannot

1   interfere where the Legislature has demonstrated the ability to make its intent

2   clear and chosen not to act." *McIntosh v. Aubry*, 14 Cal.App.4th 1576, 1589 (Cal.

3   Ct. App. 1993) (citations omitted) (holding that county's rent forbearance does not

4   constitute "payment" "out of public funds" for purposes of prevailing wage

5   statute).

6

7   a. Construed in the context of their history and the Labor Code as a

8   whole, sections 218 and 1194 suggest there is a private right of action

9   to recover split shift premiums and reporting time pay.

10   Labor Code sections 218 and 1194 were created long before the IWC

11   mandated split shift premiums and reporting time pay. Therefore, they do not

12   speak to specific legislative intent regarding those particular kinds of premium

13   wages. However, because these provisions affect the enforcement of employees'

14   right to receive mandated wages, they should be liberally construed with an eye to

15   promoting the protection of employees. "Remedial statutes. . . are not construed

16   within narrow limits of the letter of the law, but rather are to be given liberal effect

17   to promote the general object sought to be accomplished. . . ." *Industrial Welfare*

18   *Comm'n v. Superior Court*, 27 Cal. 3d 690, 702 (Cal. 1980) (citations and

19   quotation marks omitted).

20

21   (1) Labor Code section 218

22   Section 218, whose title is "Authority of district attorney and wage

23   claimant," provides in relevant part that "Nothing in this article shall limit the

24   right of any wage claimant to sue directly . . . for any wages or penalty due him

25   under this article." This provision clearly contemplates that wage claimants have

26   a private right of action of some kind, but it is ambiguous as to what wages that

27   private right of action encompasses.

28

RadioShack contends that section 218 does not create a private right of action at all, but instead merely provides that individuals are not precluded from bringing suit under Article 1 of the Labor Code (sections 200-243).  According to RadioShack, a claimant may bring suit only if some other provision in Article 1 affirmatively authorizes a civil action.  That cannot be, because there is no provision in Article 1 that does affirmatively authorize a civil action.  In general, the other provisions in that article recognize a *preexisting right* to bring independent civil actions for unpaid wages.  *See, e.g.*, Cal. Labor Code §§ 218.5 and 218.6 (providing for attorney's fees and costs and interest, respectively, "[i]n any action brought for the nonpayment of wages") and section 229 ("[a]ctions to enforce the provisions of this article for the collection of due and unpaid wages, claimed by an individual may be maintained without regard to arbitration.").  These sections would have no purpose if section 218 were construed to refer to some other separately-enumerated statute within Article 1 that stated, in effect, "The Legislature hereby authorizes a wage claimant to sue in court to recover XYZ wages."

Consistent with this construction are the conclusions Judge Fogel, a highly respected district judge, reached in two cases, to the effect that section 218 authorizes a private right of action for enforcing section 226.7 relating to meal and rest breaks.)  *See Guess v. U.S. Bancorp*, 2007 WL 1345194, *3 (N.D. Cal. May 8, 2007); *Mendez v. Bottomley Distributing Co., Inc.*, 2007 WL 1342641, *2-4 (N.D. Cal. May 8, 2007).  *See also Campbell v. Pricewaterhouse Coopers*, 2007 WL 841694 (E.D. Cal. Mar. 20, 2007) (reaching that conclusion prior to *Murphy*).  As Judge Karlton noted in *Campbell*,

> Defendant urges that Section 218 does not constitute an affirmative right to sue but merely states that nothing in the article limits an otherwise existing right to sue.  This flatly contradicts well-settled case law. [Citations]. . .[T]o infer from the silence of Section 226.7

1        an intention not to create a private right of action would import that

2        which Section 218 expressly prohibited: a limitation on the right to

3        sue.

4  *Campbell*, 2007 WL 841694 at \*5.[9]

5      RadioShack nevertheless argues that any private right of action in section

6  218, which refers to wages "due . . . under" Article 1, should not include split shift

7  premiums and reporting time pay, because they are not "under" Article 1, unlike

8  the meal and rest break premiums of section 226.7.  According to RadioShack,

9  therefore, only wages that Article 1 requires employers to pay, such as meal and

10  rest break premiums, constitute "wages. . .due . . . under this article." Otherwise,

11  contends Radio Shack, the words "under this article" would be superfluous.

12  Although those words may not be rendered superfluous, they do not carry the

13  significance RadioShack gives them.

14      Section 218 was originally enacted in 1919 and subsequently codified into

15  the Labor Code in 1937.  Other than section 226.7, which the Legislature enacted

16  in 2000, Article 1 contains *no* provision creating any right to a particular kind of

17  wages.  It follows that before 2000, the phrase "wages. . . due under this article"

18  could not have meant what Radio Shack contends.  Given that Section 218 simply

19  does not specify what kinds of wages a worker may seek in a lawsuit, and given

20  the rule that this kind of statute must be construed broadly in favor of protecting

21  workers, *see Murphy*, 40 Cal. 4th at 1103, the phrase can be construed to refer not

22  to a specific mandated category of wages, but to wages of any kind that had not

23  been paid in accordance with requirements in Article 1 governing the time and

24  manner of payment.  If so, the private right of action in section 218 cannot be

---

[9] The DLSE itself recognizes that employees have a private right of action under section 218: "Section 218. . .permits claimants to sue directly or through an assignee for any wages or penalties that may be due."  DLSE Enforcement Policies and Interpretations Manual (Apr. 2008), at § 12.1.1.

1   restricted to only meal and rest break premiums.  Put another way, the fact that

2   meal and rest break premiums were placed within Article 1 does not mean that the

3   Legislature did not intend that workers could not  have access to the courts to

4   recover other legally mandated wages, such as those at issue here.  *See Moradi-*

5   *Shalal*, 46 Cal.3d at 301 (noting that "something more than mere silence should be

6   required before [ ] acquiescence is elevated into a species of implied legislation. . .

7   .").

8

9   (2) Labor Code section 1194

10   The California Supreme Court cited sections 218 and 1194 together when it

11   noted that employees may recover unpaid wages in court.  *Cuadra*, 17 Cal.4th at

12   858.  Section 1194 provides that " . . . any employee receiving less than the legal

13   minimum wage or the legal overtime compensation . . . is entitled to recover in a

14   civil action the unpaid . . . full amount . . . ."  Cal. Labor Code § 1194(a).  Unlike

15   Section 218, Section 1194 *does* specifically express the Legislature's intent as to

16   at least two categories of wages:  minimum wages and overtime.  The history of

17   section 1194 and of the IWC's role in prescribing minimum requirements for

18   wages and hours suggests, however, that split shift premiums and reporting time

19   pay are among the array of wages that the Supreme Court now would find to be

20   within the scope of the Legislature's intent.

21   Section 1194 was originally enacted in 1913 to mandate minimum wage

22   and overtime pay for women and children.  Initially, it allowed private civil

23   actions only for recovery of minimum wages.  In 1961, section 1194 was amended

24   to extend the private right of action to overtime claims.  By 1973, the law was

25   amended to cover any employee, not just women and minors.  Since 1973, the

26   Legislature has not amended the reach of its substantive protections.  In 1913, the

27   same year that the Legislature enacted section 1194, it established the IWC and

28   charged it with prescribing minimum requirements with respect to the wages,

1    hours and working conditions of women and children.  *See Industrial Welfare*

2    *Comm'n*, 27 Cal. 3d at 702.  So Section 1194 and the IWC were the components

3    of what was basically a single, two-pronged system for protecting workers,

4    whereby wage and hour laws and rules would be made by both the Legislature and

5    the IWC.  *See* Cal. Labor Code §§ 1173, 1185*,* 1197, 1198.  That plan may have

6    had as its foundation the passage of general statutory requirements, such as for a

7    minimum wage, but the Legislature clearly intended the IWC to supplement such

8    legislation by investigating workplace conditions and filling in any gaps in the

9    protections afforded workers by issuing binding wage orders.  *See* Cal. Labor

10    Code §§ 1197; 1198.

11            Pursuant to its delegated powers, the IWC proceeded to promulgate and

12    implement various mechanisms to ensure compliance with minimum wage and

13    hour standards, such as split shift premiums and reporting time pay.  *See Murphy*,

14    40 Cal. 4th at 1111 (noting that split shift premiums and reporting time pay are

15    devices for enforcing maximum hours and minimum pay requirements).  In other

16    words, IWC regulations such as the ones at issue here are meant to deter

17    employers from circumventing statutory minimum wage and overtime

18    requirements.  *See Calif. Drive-In Restaurant Ass'n v. Clark*, 22 Cal.2d 287, 302

19    (Cal. 1943) (upholding wage order provision barring crediting of tips toward

20    minimum wage in restaurants on the basis that the IWC's  "power to insure the

21    receipt of the minimum wage and to prevent evasion and subterfuge is necessarily

22    an implied power flowing from the power to fix a minimum wage delegated to

23    [it].").  Permitting employers to force employees to work, or appear for work, in

24    non-traditional hours with impunity would undermine such requirements.  Indeed,

25    as *Murphy* counsels, the IWC's split shift and reporting time provisions are

26    functionally identical to the overtime premium and meal and rest break premium.

27    *Murphy,* 40 Cal. 4th at 1111-12.  Because of their integral relationship to

28    minimum wage and overtime requirements, split shift premiums and reporting

time pay should be - - and as this Court sees it, they are - - enforceable to the same extent as minimum wage and overtime requirements.  In short, section 1194 should be construed to include premium wages created by the IWC to reinforce basic wage and hour standards, and it is likely that the California Supreme Court would see it that way.

This conclusion, too, is consistent with the principle cited above that "statutes regulating wage and hour law are to be liberally construed with an eye to protecting employees."  *Murphy*, 40 Cal. 4th at 1111.  It is also consistent with the principle that "[s]tatutes are to be given a reasonable and commonsense interpretation consistent with the apparent legislative purpose and intent 'and which, when applied, will result in wise policy rather than mischief or absurdity.'" *Dyna-Med, Inc.*, 43 Cal.3d at 1392 (citation omitted).  In this regard, if workers could not turn to the courts to enforce their right to split shift premiums and reporting time pay, the result would be that wages mandated by contract or by a statute would be directly recoverable in court, while other wages that are mandated by the IWC in order to prevent evasion of minimum wage and overtime protections would not be recoverable in court.  It is doubtful that the Supreme Court would find that the Legislature intended that there be such a gaping inconsistency.

   b. Courts have routinely adjudicated private actions to enforce IWC
    wage orders.

The Court of Appeal for the Second District has adjudicated claims involving split shift premiums mandated by IWC wage orders, without any challenge to plaintiffs' right to recover those premiums.  *See Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal.App.4th 365, 381 (Cal. Ct. App. 2005); *Leighton v. Old Heidelberg, Ltd.*, 219 Cal.App.3d 1062, 1077 (Cal. Ct. App. 1990).  In addition, many courts have construed and applied the IWC's white collar

1  exemptions, which are set forth in the same wage order at issue here, Wage Order

2  4.  *See, e.g.*, *Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042, 1062 (C.D.

3  Cal. 2006) (outside salesperson exemption); *Palacio v. Progressive Ins. Co.*, 244

4  F. Supp. 2d 1040, 1049 (C.D. Cal. 2002) (administrative exemption); *Ramirez v.*

5  *Yosemite Water Co.*, 20 Cal.4th 785, 790-91 (Cal. 1999) (outside salesperson

6  exemption).  *See also Burnside v. Kiewit Pacific Corporation*, 491 F.3d 1053,

7  1064 (9th Cir. 2007) (plaintiffs may sue in court to enforce claims based on IWC

8  Wage Order 16-2001, entitled "Reporting Time Pay," which claims are not

9  necessarily preempted by the Labor Management Relations Act); *Brock v.*

10  *Carrion*, 332 F. Supp. 2d 1320, 1328, (E.D. Cal. 2004) (applying Wage Order No.

11  5's provision setting the maximum amount of meals or lodging that employer may

12  credit against minimum wage requirements).

13    Cases such as *Burnside*, *Caliber and Wang* show that courts have

14  entertained actions for unpaid wages without regard to whether the wages are

15  mandated by statute or an IWC wage order.   They reinforce this Court's

16  conclusion that it is likely that the California Supreme Court would view Labor

17  Code sections 218 and 1194 as conferring private rights of action to enforce IWC-

18  promulgated rights to shift premiums and reporting time pay, assuming (as this

19  Court concluded above) that such premiums and pay are wages just like overtime

20  and meal and rest break wages.  *See Murphy*, 40 Cal.4th at 1111-12.

21    The cases to the contrary cited by RadioShack are unpersuasive.

22  RadioShack relies heavily on *Johnson v. GMRI, Inc.*, which twice held in

23  unpublished decisions that there is no private right of action to enforce Wage

24  Order 4-2001 because of the availability of an administrative remedy.  In its first

25  order, the *Johnson* court relied primarily on cases construing the insurance code

26  and regulations in finding that the DLSE enforcement scheme precluded a private

27  right of action to enforce IWC wage orders.  *Johnson v. GMRI, Inc.*, 2007 WL

28  963209 *4 (E.D. Cal. Mar. 29, 2007).   In May 2007, after the California Supreme

Court decided *Murphy*, the same court again dismissed those claims because plaintiffs failed to demonstrate "how *Murphy* converted their split shift and cash shortages causes of action into private rights of action."  *Johnson v. GMRI, Inc.*, 2007 WL 1490819 *5 (E.D. Cal. May 21, 2007).  By then the claims had been filed as part of a first amended complaint.  The court rejected plaintiffs' reliance on *Murphy* in part because plaintiffs had filed that amended complaint four days before *Murphy* was decided.  *Id.* at *5.  In neither order did the *Johnson* court consider the proposition that split shift premiums and reporting time pay are wages subject to both administrative and judicial remedies, as reflected in the above-cited line of California Supreme Court cases, including *Murphy*.  Nor did the *Johnson* court consider sections 218 and 1194 of the Labor Code.  For these reasons, this Court finds *Johnson v. GMRI* unpersuasive.

RadioShack also relies on *Matoff v. Brinker Restaurant Corp.*, 439 F. Supp.2d 1035 (C.D. Cal. 2006).  *Matoff* is distinguishable because it was not an action for unpaid wages *per se*.  At issue there was the plaintiff's allegation of "unlawful tip pooling distribution" in violation of section 351 of the Labor Code.  *Matoff*, 439 F. Supp. 2d at 1036.  The Court quoted section 355, which states that the Department of Industrial Relations "shall enforce" section 351 through levying fines for violations and that such fines shall go to the state treasury.  *Id.* at 1037.  It was the presence of these provisions and the absence of any indication of legislative intent to create a private right to enforce section 351 that prompted the *Matoff* court to dismiss plaintiff's claim under that section.  *Id.*

*Bureerong v. Uvawas*, 922 F.Supp. 1450 (C.D. Cal. 1996) also is distinguishable.  Like *Matoff*, and unlike this case, *Bureerong* was not an action for unpaid wages; it was brought under Labor Code section 2651 to enforce a prohibition against the manufacture of apparel by industrial homework.  *Bureerong*, 922 F.Supp. at 1473.  Reviewing the language and the history of the Industrial Homework Act, the *Bureerong* court noted that "the express language

1    of the statute indicates that no private right of action exists" and that "the

2    legislative history is silent on [that] question." *Id.* at 1475.  It also noted that the

3    Industrial Homework Act created a comprehensive enforcement scheme and that

4    the legislative history focused on giving the DLSE and Department of Industrial

5    Relations greater enforcement powers.  *Id.*  Given those circumstances, the Court

6    concluded that the Legislature intended to remedy the abuses associated with

7    industrial homework through agency enforcement exclusively.  *Id.*  In the unpaid

8    wages context, as already discussed, DLSE enforcement coexists with private

9    litigation.

10

11              c. Public policy supports a private right of action.

12          What is apparent from the foregoing analyses is that the Legislature has

13    repeatedly (and recently) sought to enhance employers' compliance with labor

14    laws meant to protect workers.  In 2000, for example, truly glaring abuses --

15    denial of meal and rest breaks -- resulted in the enactment of a wage premium in

16    Labor Code § 226.7.   More recently, troubling gaps in enforcement of penalties

17    for Labor Code violations led to the passage of the Private Attorneys General Act

18    ("PAGA") in 2004.  Cal. Labor Code § 2699 *et seq.*.[10]   Both pieces of legislation

19    reflected the Legislature's concern over the lack of enforcement of wage and hour

20    law.  *See Murphy*, 40 Cal. 4th at 1105-06 (describing origins of section 226.7);

21    Sen. Judiciary Comm., Sen. Committee analysis of Sen. Bill No. 796 (2003-2004

22    Reg. Sess), as amended Apr. 22, 2003, pp. 2-3) (describing the Legislature's

23    concern that the "[Department of Industrial Relations] was failing to effectively

24    enforce labor law violations.").

25          In enacting section 226.7 and PAGA, the Legislature did not purport to

26    address the status of all IWC-mandated wage premiums or sections 218 and 1194.

27    _____

28    [10]  PAGA is described more fully in the next section of this order.

But little significance should be attached to that omission.  The State of California is beset with fiscal and budgetary woes, crippling the State's capacity to provide required services.  As noted above, the Legislature stopped funding the IWC almost four years ago.  Lacking even a working staff, the IWC cannot fulfill its most basic duties, such as making periodic adjustments in the minimum wage.  As a consequence, such functions necessarily have reverted to the Legislature.[11]  The Legislature's capacity to respond continually to newly publicized revelations of pervasive Labor Code violations thus is limited.  At the same time, it is difficult and daunting for employees to challenge allegedly unlawful practices.  This is especially true of low-wage workers, who are disproportionately affected by employers' increasing demands for non-traditional hours of work.[12]  Seen in this context, any distinction in the Labor Code between split shift premiums and reporting time pay and wages on the one hand and, say,  meal and rest break rights on the other hand is vanishingly thin.  Highly likely it is, therefore, that the California Supreme Court would rule that to deny direct access to courts for claims such as these plaintiffs seek to pursue would interfere with, if not negate, the State's policy of protecting its workers.

**C.     Plaintiffs May Not Recover Civil Penalties Under Section 558**

----

[11]The IWC last increased the minimum wage in 2001.  In 2002, the administration of Governor Davis approved an 8% increase to $6.75 per hour.  Soon after, the Legislature sought to again increase the minimum wage and institute automatic annual increases tied to the cost of living, known as inflation indexing.  After vetoing two bills that included indexing, on September 12, 2006 Governor Schwarzenegger signed a minimum wage law that increased the minimum wage to $8.00 in 2008.  *See Marc Lifsher & Alana Semuels*, "State Minimum Wage Gets a Raise," L.A. TIMES at 1 (Sep. 13, 2006).

[12]For a discussion of the trend toward increasing employer-required non-standard hours, see Robert C. Bird & Niki Mirtorabi, *Shiftwork and the Law*, 27 BERKELEY J. EMP. & LAB. L. 383, 388-89 (2006)

Plaintiffs claim civil penalties pursuant to California Labor Code section 558 and PAGA.  RadioShack contends that PAGA allows private claimants to sue for penalties under section 2699(f)(1) or (2) only.  It also contends that, in any event, Plaintiffs have not satisfied section 2699.3, which requires that they exhaust certain administrative procedures before instituting a civil action.  Although RadioShack is wrong on the first point, it is correct that Plaintiffs cannot rely on PAGA to recover civil penalties without satisfying the administrative prerequisites.

1. Labor Code Section 558.

Plaintiffs seek civil penalties pursuant to Labor Code section 558.  Compl. ¶ 32.[13]  Section 558(a) provides:

> Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter [*i.e.*, §§ 500-558] or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows. . . .

Cal. Labor Code § 558(a).  Section 558(b) authorizes the Labor Commissioner to issue a citation to an employer for violating any provision in sections 500-558 or for violating any IWC wage order regulating hours and days of work.  *Id.* § 558(b).  It further provides that the procedures for issuing, contesting, and enforcing judgments for citations or civil penalties for violations of the minimum wage laws shall also apply to proceedings under sections 500 to 558.  *Id.* Plaintiffs do not allege specific violations of any of sections 500 to 558.  The Court will assume that they are seeking civil penalties only for violations of Wage Order 4-2001, namely the split shift premium and reporting time pay violations.

---

[13]Plaintiffs do not seek civil penalties for any of the other violations that they allege, *i.e.*, violations of sections 201, 202, 203, and 1194.

1

2        2. The Private Attorneys General Act.

3        PAGA provides a private right of action to recover civil penalties for

4   specified provisions of the Labor Code.  *See generally Caliber Bodyworks, Inc. v.*

5   *Superior Court*, 134 Cal.App.4th 365, 374-75 (Cal. Ct. App. 2005).  The

6   California Legislature enacted PAGA in 2003 in response to the Labor and

7   Workforce Development Agency's (LWDA) shortage of funds and staffing to

8   enforce the state's labor laws.  *Id.* at 375, n. 6 (quoting declaration of reasons and

9   purpose in the enacted statute.)  As one Court of Appeal put it, PAGA "empowers

10  or deputizes an aggrieved employee to sue for civil penalties 'on behalf of himself

11  or herself and other current or former employees' as an alternative to enforcement

12  by the LWDA."  *Dunlap v. Superior Court*, 142 Cal.App.4th 330, 337 (Cal. Ct.

13  App. 2006) (quoting Cal. Labor Code § 2699(a)).  For most kinds of civil

14  penalties recoverable under PAGA, seventy-five percent of the recovered penalty

15  is distributed to the LWDA and twenty-five percent to the aggrieved employees.

16  Cal. Labor Code § 2699(I).

17       Before filing an action to recover civil penalties, an employee must comply

18  with Labor Code § 2699.3, which requires exhaustion of administrative

19  procedures for various statutory violations.  For certain enumerated Labor Code

20  violations (see section 2699.5) and for health and safety violations, PAGA

21  requires that the employee must provide written notice to the agency and the

22  employer and then must give the agency time to investigate and to decide whether

23  to cite the employer for the alleged violations.  Cal. Labor Code § 2699.3(a), (b).

24  The administrative requirements for other kinds of violations appear in §

25  2699.3(c), which requires the employee to provide written notice to the LWDA

26  and the employer, give the employer 33 days to cure the violation, and wait for the

27  LWDA to determine whether the violation was cured.  Cal. Labor Code §

28  2699.3(c)(1), (c)(2), (c)(3).

1

2   3. <u>Section 2699(a) of PAGA allows plaintiffs to sue for section 558 civil</u>

3   <u>penalties.</u>

4   Section 2699(f) contains a default civil penalty for all Labor Code sections

5 that do not explicitly specify any civil penalty. *Caliber Bodyworks, Inc.,* 134

6 Cal.App.4th at 375. RadioShack incorrectly asserts that private claimants may sue

7 for penalties only under section 2699(f)(1) or (2). RadioShack ignores Section

8 2699(a), which allows an aggrieved employee to seek civil penalties for violation

9 of any Labor Code provision that previously *did* provide for recovery of a civil

10 penalty by the LWDA. Because section 558 authorizes recovery of civil penalties

11 and provides for LWDA enforcement, the private right of action authorized in

12 section 2699(a) reaches section 558. *See Reynolds v. Bement*, 36 Cal.4th 1075,

13 1089 (Cal. 2005) (stating in *dicta* that § 2699(a) provides private right of action to

14 recover section 558 civil penalties).

15

16   4. <u>The notice and cure requirements of section 2699.3(c) apply to Plaintiffs'</u>

17   <u>claim for civil penalties.</u>

18   RadioShack contends that Plaintiffs did not comply with Labor Code

19 Section 2699.3 ("Requirements for aggrieved employee to commence in a civil

20 action"). Section 2699.3(c) governs the requirements for a civil action brought

21 under § 2699(f) for "a violation of any provision other than those listed in Section

22 2699.5 or Division 5 (commencing with Section 6300)."[14]  Wage order violations

23 are not listed in section 2699.5 and Division 5 refers to health and safety

24 violations. Thus, the notice and cure provisions of section 2699.3(c) apply to

25 wage order violations, and that section in turn applies to the civil penalties

26 authorized by section 558.

27

28

  [14]Division 5 refers to health and safety violations.

1       This reading of section 2699.3 is consistent with the Legislature's intent to

2   require administrative exhaustion before individuals may recover civil penalties in

3   court. *See Dunlap*, 142 Cal.App.4th at 336; *Caliber Bodyworks, Inc.*, 134

4   Cal.App.4th at 374.  The notice and exhaustion requirements were added to

5   PAGA as part of an urgent amendment in August 2004 due to perceived abuses of

6   PAGA. *Dunlap*, 142 Cal.App.4th at 338.  The amendment was designed to

7   improve PAGA by

8           allowing the Labor Agency to act first on more 'serious' violations

9           such as wage and hour violations and give employers an opportunity

10          to cure less serious violations.  The bill protects business from

11          shakedown lawsuits, yet ensures that labor laws protecting

12          California's working men and women are enforced - - either through

13          the Labor Agency or through the courts.

14  *Id.* at 338-39 (quoting Sen. Rules Com. Off. of Sen. Floor Analyses, Sen. Floor

15  analysis of Sen. Bill No. 1809 (2003-2004 Reg. Sess.) as amended July 27, 2004,

16  pp. 5-6).

17      If a plaintiff is relying on section 2699(a) for a private right of action to

18  collect civil penalties previously enforceable only by the LWDA, it necessarily

19  follows that he must first exhaust the administrative procedures.  For the

20  foregoing reasons then, the Court holds that to the extent Plaintiffs rely on PAGA

21  for a private right of action to recover the civil penalty allowed by section 558,

22  they are required to meet that Act's pre-filing notice and cure requirements.

23  Plaintiffs do not dispute that they did not do so.

24  //

25  //

26  //

27  //

28  //

5.  <u>Plaintiffs cannot recover section 558 civil penalties via the  Unfair Competition Law ("UCL").</u>

Under the UCL, a plaintiff may only recover money or property in which he has an ownership interest. *Korea Supply Co. v. Lockheed Martin Corp.*, 131 Cal.Rptr.2d 29, 42 (2003)).  In the employment context, an employee has an immediate entitlement to and therefore vested interest in earned wages and monies akin to wages (such as tips). *See Murphy*, 40 Cal. 4th at 1108 (rest or meal period premium); *Matoff*, 439 F.Supp.2d at 1038 (restaurant employee's tips).  In contrast, because the penalty provisions in the Labor Code require that the employee or Labor Commissioner "first take some action to enforce them. . . [t]he right to a penalty, unlike section 226.7 pay, does not vest until someone has taken action to enforce it." *Murphy*, 40 Cal.4th at 1108.  Here, Plaintiffs seek to recover the penalties authorized by section 558 for wage order violations.  No agency has taken action to enforce this penalty provision, and these Plaintiffs are barred from enforcing it for lack of administrative exhaustion.  Therefore, they have no ownership interest in those penalties and cannot recover them via the UCL restitution remedy.

//
//
//
//
//
//
//
//
//
//
//

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's motion for judgment on the pleadings.[15]  The Court denies the motion as to Plaintiffs' claim for unpaid split shift premiums and reporting time pay.  The Court grants the motion as to civil penalties under Labor Code section 558. Plaintiffs may seek to amend their complaint to plead compliance with the Private Attorneys General Act's pre-filing notice and exhaustion requirements if they can do so in good faith.  Plaintiffs must file any such amended complaint by not later than May 30, 2008.

IT IS SO ORDERED.

DATED: May 15, 2008

_____

A. HOWARD MATZ

United States District Judge

---

[15]Docket No. 22.