O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2252 AHM (AJWx) | Date | July 2, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: | |

**Proceedings:**       IN CHAMBERS (No Proceedings Held)

As indicated at the hearing on June 30, 2008, a number of matters relevant to class certification require further clarification. The Court directs both parties to respond to the following questions. Where you provide supplemental factual information, support it with declarations.

Reporting Time Pay

1. If the length of an employee's workday could vary, even day to day, does the law presume a usual workday of eight hours unless otherwise expressly stipulated by the employer and employee?

2. Other than the 1943 Attorney General opinion already cited by RadioShack, what, if any, authorities support the proposition that the reporting time regulation is a "minimum notice regulation, not a minimum shift regulation," as defense counsel stated at the hearing? What authorities, if any, counter that proposition?

3. Is it correct that although there may be some variation in the length of many employees' workday, for full time employees the usual workday is 8 hours? (See Frick, S. Smith, Kamar, Velasco and Solorio declarations, as well as RadioShack's store manager declarations.)

4. For class certification purposes, under Rule 23 would it be permissible and advisable to mathematically calculate the amount of time constituting an average workday that would apply to all RadioShack's part-time employees? How could this be

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | July 2, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

accomplished through discovery?

5. As articulated at the hearing, RadioShack's position is that in the absence of a usual day's work, a meeting scheduled in advance is properly considered a "scheduled day's work," consisting of one short shift, and therefore does not trigger the reporting time regulation. Does RadioShack contend that a Saturday morning meeting or a district office meeting constitutes a "scheduled day's work" for those employees *not* otherwise scheduled to work that day, but not for those employees who *are* otherwise scheduled to work that day? If so, what supports that contention?

6. What is RadioShack's evidence for the assertion its counsel made at the hearing that "the vast majority of RS's workforce are part-time employees. They work far less than 8 hours. The only ones who work 8 hours are the store managers"?

7. At the hearing, RadioShack's counsel stated that RadioShack does not maintain payroll records that indicate whether an employee attended a given meeting and that its records merely show the total number of hours that a manager is requesting for an employee's compensation. Tom Schultz stated in his declaration that RadioShack's reporting time policies (which appear to guarantee 2 hours of pay for a meeting) are incorporated into WorkBrain (Schultz Decl. ¶ 21). How is that guaranteed 2-hour payment added to an employee's compensation? Is it the store manager's responsibility to add 2 hours to an employee's timesheet regardless of how long the meeting was? Do stores transmit data to the payroll department that reflect the dates and hours of work?

8. State your position as to the feasibility and advisability of dividing the current proposed class into two subclasses: (1) full-time employees and (2) part-time employees.

Split Shift Premium

1. As a matter of law, is the split shift premium dependent on whether the employee was compensated at a rate equivalent to the minimum wage for the hours actually worked plus one extra hour at minimum wage, as RadioShack contends? Or is the premium (at the minimum wage rate) required whenever there is a split shift, regardless of whether the employee's actual compensation already equaled or exceeded the

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | July 2, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

minimum wage?

2. RadioShack's counsel represented that RadioShack's split shift payment policy is that an employee is paid the premium only if he is not already compensated at a rate equivalent to the minimum wage for the hours actually worked plus one extra hour. That representation appears consistent with RadioShack's Appendix, p. 123, which counsel cited. Is that formula programmed into WorkBrain?[1]

3. Under RadioShack's policy, is the following a correct inference: Among those sales associates whose base salary is the minimum wage and who worked a split shift, those who earn larger commissions and spiffs are less likely to receive a split shift premium than those who earn smaller commissions and spiffs?

4. As a matter of law, is an employee who requests a split shift schedule or who works a split shift for a personal reason (*e.g.*, a doctor's appointment) entitled to the split shift premium?

5. Do RadioShack's payroll records show whether a split shift premium was in fact paid to any given employee? If so, what records?

Each side shall file its response by not later than July 16, 2008. Each side may file a reply of five pages or less to the other side's response by not later than July 21, 2008.

|  | : |  |
|---|---|---|
| Initials of Preparer | | SMO |

---

[1] Plaintiffs' Exhibit 4 appears to be a printout from WorkBrain that contains relevant information, but the copy quality is too poor to be legible. Plaintiff shall attach a legible copy to their response.