O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

**Proceedings:**          IN CHAMBERS (No Proceedings Held)

## I.     INTRODUCTION

In an earlier order in this putative class action, the Court wrote:

when an employee is required to report for work and does report, but is not put to work or is given less than half the scheduled work, "the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay...." [Citation.]  When an employee is required to work a "split shift" (is scheduled for two nonconsecutive shifts in the same day), the employer must pay the employee one additional hour of wages. [Citation.]

*Kamar v. RadioShack Corp.*, 2008 WL 2229166, *1 (May 15, 2008) (quoting *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1111 (Cal. 2007)).  These requirements are set forth in numerous Industrial Welfare Commission (IWC) wage orders, including the one that applies in this case, Wage Order 4-2001, codified at 8 Cal. Code Regs. §§ 11040.  According to Plaintiffs, who are former employees of Defendant RadioShack Corporation ("RadioShack"), RadioShack employees were required to attend Saturday morning meetings in the stores and training meetings at district offices but were not paid reporting time pay and were required to work split shifts without split shift premium compensation.

Plaintiffs now seek certification of a class defined as "all California employees of defendant paid on an hourly basis as nonexempt employees for the period of March 2003

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

to the present."  According to Plaintiffs, RadioShack's policy and its pervasive practice of reporting time and split shift violations justify class certification.  Since Plaintiffs seek class certification only on their claims for split shift premiums and reporting time pay under California law, the Court will rule on this motion on the basis of the following revised class definition: "All California employees[1] of defendant paid on an hourly basis as nonexempt employees for the period of March 2003 to the present who were instructed to and attended a Saturday store meeting or district office meeting without receiving the full amount of mandated premium pay, or who worked a split shift schedule without receiving the full amount of mandated premium pay, or both."[2]

Defendant RadioShack Corporation ("RadioShack") opposes class certification for a number of reasons.  In particular, RadioShack argues that common issues do not predominate because liability under the reporting time and split shift regulations will turn on facts that vary from employee to employee, store to store.

The Court held a hearing on this motion on June 30, 2008.  After the hearing, the Court circulated a list of questions for supplemental briefing.  Based on the parties' papers and their assertions at the hearing, the Court GRANTS Plaintiffs' motion to certify the class, as modified.[3]

## II.   LEGAL STANDARDS FOR CLASS CERTIFICATION

The party seeking class certification bears the burden of establishing that each of

---

[1]All the currently named plaintiffs are *former* employees.  Neither side has even noted, much less made an issue of the fact that former employees are not necessarily in the same position as current employees.  The Court therefore assumes that the parties have agreed to proceed on the basis that the current named plaintiffs properly may represent the entire class despite their status as former employees. If necessary, the complaint could be amended solely to add an individual who is currently employed by RadioShack to the group of named plaintiffs.

[2]It is well within the court's authority to redefine Plaintiffs' proposed class.  *See* WRIGHT & MILLER, FED. PRAC. & PROC. § 1759 at 130-31 (2008) ("if plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23.")

[3]Docket No. 18.  For rulings on the parties' respective evidentiary objections, see the accompanying order.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met. *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007) (citing *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended*, 273 F.3d 1266 (9th Cir. 2001)). A district court may certify a class only if, after "rigorous analysis," it determines that the party seeking certification has met its burden. *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 158-161 (1982). In reviewing a motion for class certification, the Court generally is bound to take the substantive allegations of the complaint as true. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) (citing *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir. 1975)). Nevertheless, the Court may look beyond the pleadings to determine whether the requirements of Rule 23 have been met. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (citation omitted). In fact, "courts are not only at liberty to but *must* consider evidence which goes to the requirements of Rule 23 [at the class certification stage] even [if] the evidence may also relate to the underlying merits of the case." *Dukes*, 509 F.3d at 1178 n.2 (internal quotations and citation omitted). Ultimately, it is within the district court's broad discretion to determine whether a class should be certified. *Id.* at 1176.

## III.   DISCUSSION

### A.   Evidence

The evidence consists of RadioShack's written policies and practices, declarations of putative class members and named plaintiffs, declarations from nineteen current or former RadioShack store managers, and declaration and deposition testimony from a RadioShack executive in charge of California stores.

#### 1. RadioShack's scheduling practices, generally.

Store managers write weekly and daily schedules for themselves and their staff using a form provided by RadioShack. (Pls.' Exhibits ISO Motion, Ex. 5; Schultz Decl. ¶ 7.) They distribute sales associates' schedules, usually at least two weeks in advance. (Schultz Decl. ¶ 7.) These schedules include not only the associates' shifts in the store but also any store or district meetings the associate is expected to attend. (*Id.*) These scheduling policies and practices are part of the new Store Operating Procedures that

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

RadioShack instituted in 2005.  (Schultz Decl. ¶ 7 & Ex. 2A.)

Prior to 2005, a sales associate could work as little as two hours or as much as twelve hours per day.  (Schultz Decl. ¶ 11.)  In 2005, RadioShack instituted a three-hour minimum shift.  (*Id.*)

According to RadioShack's "Scheduling and Schedule Adherence" document dated February 2006, full-time associates work a minimum of 32 hours, while part-time associates have no required minimum hours but are instead scheduled based on the needs of the business and their availability.  (*Id.*, Ex. 2A at 116-17.)  In 2006 and 2007, 59 percent of associates had part-time status and 41 percent had full-time status.  (Schultz Supplemental Declaration of Tom Schultz ISO RadioShack's Response to Court's Minute Order ("Schultz Supp. Decl.") ¶ 6.)  Store managers themselves generally work between 42 and 54 hours over five or six days per week.  (*Id.* ¶ 3.)

2. RadioShack's policies and practices concerning meetings.

All of Plaintiffs' declarants stated that they attended meetings at the store on Saturdays or at district offices, or both, and that their attendance was required.  (*See generally* Pls' Exs. ISO Motion for Class Certification, Exs. 7-10, 14-18.)  All of the declarants testified that sometimes they were scheduled to work on the same day of the meeting and sometimes they were not.  All stated that they did not receive or do not recall receiving reporting time pay.  Most declarants testified that they were paid for their time at the meeting itself (*e.g.*, Frick, Mitchell, Partida, J. Smith, Terald Smith, Rhue).  Others reported that they were not even paid for their time at the meeting (Kamar, Greenwood).

Plaintiffs' declarants differed as to the frequency and length of the meetings.  All the named plaintiffs (Kamar, Mitchell, Terald Smith, Partida, and Velasco) stated that they were required to attend Saturday morning meetings weekly and district office meetings monthly.  One putative class member (James Smith) testified that he attended Saturday meetings every other week.  Another putative class member (Greenwood) reported that the district office meetings in his district were held every other month. Most declarants described the Saturday meetings as being scheduled for one hour, although they may have actually lasted as little as fifteen minutes and as long as one and a half hours (*e.g.*, Terald Smith, Kamar, Partida).  The district office meetings varied

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

greatly in length: one to two hours (Frick), "a couple of hours" (Kamar), three to four hours (Rhue), or three to five hours (Greenwood).

Consistent with Plaintiffs' declarations, RadioShack store managers' practices with respect to meetings varied. RadioShack also emphasized that as of 2005, store managers were not supposed to hold Saturday morning meetings unless they were able to do so consistent with RadioShack's new three-hour minimum shift requirement. (Schultz Decl. ¶ 7.)

Plaintiffs also cite the testimony of RadioShack's Area Vice President Tom Schultz as evidence of corporate policy regarding reporting time pay. Schultz is in charge of the operations of 548 of the 550 stores in California. (Appendix of Evidence ISO Def't's Opp'n, Ex. 2, Declaration of Tom Schultz ("Schultz Decl.") ¶ 1.) In his declaration, Schultz described "mandatory corporate policies and procedures. . . that apply to all the stores in California." (Schultz Decl. ¶ 4.) In both his deposition and declaration testimony, Schultz described RadioShack's reporting time policy as follows:

RadioShack's reporting time pay policy is that any Associate or Store Manager who works a scheduled shift but is asked to go home early is guaranteed pay of 50% of his scheduled shift with a minimum of two hours and a maximum of four hours less any time worked. Also, if an Associate or Store Manager is not scheduled a shift but is working and then asked to go home early, that person is guaranteed pay of two hours less any time worked. In 2005, RadioShack slightly amended its policy such that if an Associate is *scheduled* to attend a one hour meeting and no other shift for that day, that Associate will still receive a minimum pay of 2 hours for the day. (As mentioned previously, in 2005, an Associate is not supposed to be scheduled for only a 1 hour meeting. If, however, a Store Manager does schedule an Associate for less than 3 hours, that Associate is guaranteed at least 2 hours of wages.)

(Schultz Decl. ¶ 20; *see also* Supplemental Declaration of Andrew Jardini ISO Motion

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

for Class Certification, Ex. 5, Schultz Dep. 57:19-58:5,59:6-10.[4])  RadioShack did not explain in plain terms what Schultz meant by "less any time worked."  (RadioShack's explanations and descriptions of its policies and practices, with respect to both claims at issue, sometimes border on the incomprehensible.)  It is clear, however, that as of 2005, a RadioShack employee who reports for a Saturday meeting lasting less than two hours is supposed to be paid two hours of pay.  (Schultz Dep. 36:1-37:2, 39:2-40:7.)

3. RadioShack's split shift policy and practices.

Three of Plaintiffs' declarants (Greenwood, Partida, and T. Smith) stated that they had worked split shifts.  (Pls. ISO Mot., Ex. 6, 16, 17.)  Greenwood and T. Smith stated that they did not receive a split shift premium.  (*Id.* Exs. 6, 17.)

According to Schultz's declaration and a RadioShack memorandum dated May 24, 2000 on split shift pay, RadioShack's split shift policy is that '[w]hen an employee works a split shift, the employee must be paid one hour of pay at the minimum wage, in addition to [the] minimum wage for the hours actually worked." (Schultz Decl. ¶ 19 & Ex 2B).  That part of the policy tracks the language of the IWC's split shift regulation ("one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday. . .").  Store Managers are instructed to "add 1 additional hour to an employee's hours worked for any day when the employee works a split shift."  (*Id.*)  The memo also states: "The additional hour will be included in the commission calculation for the week.  This means that the employee may not receive any additional pay if he or she earns commission for that week instead of the minimum guarantee."  (Schultz Decl., Ex. 2B.)

At the hearing, RadioShack's counsel explained its split shift policy in plain language: "The split shift policy is if an employee works a split shift, but that employee is compensated at more than the minimum wage times the hours that they [*sic*] worked plus one additional hour at the minimum wage - - they have already made more than that amount - - then no additional compensation is due."  (Tr., June 30 2008, at 10:6-11.)

---

[4]Citations to the Schultz Deposition refer to the transcript's original pagination, not the handwritten pagination,

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

> In its supplemental papers, RadioShack suddenly changed its story, asserting:
> At the hearing, RadioShack's counsel inadvertently misstated the company's
> policy with regard to split shift payments.  While the Court's question (and
> counsel's statement) properly articulates the legal requirement, RadioShack's
> policy is to pay one additional hour at the employee's regular rate, when an
> employee is required to work a split shift.  This payment is made regardless of
> whether the employee has earned more than the minimum wage for the hours
> worked plus one hour.

Def't's Response to Court's Minute Order at 15.[5]  In any event, the Court finds that
RadioShack's *current* policy is to pay one additional hour at the employee's regular
rate, whenever the employee works a split shift, although there is reason to conclude
that that was not always the policy.  (Schultz Supp. Decl. ¶ 9; Declaration of Cathy
Simpson ISO RadioShack's Response to Court's Minute Order ("Simpson Decl.") ¶ 3.)
According to RadioShack, this policy results in RadioShack paying *more* than it is
obligated to.  (*See id.*)  RadioShack chose this policy because it is easier to program
"WorkBrain" (explained below) to inform payroll to pay one additional hour whenever
there is a split shift.  (Supplemental Declaration of Lance Franks ISO RadioShack's
Reply to Plaintiffs' Responses ("Franks Supp. Decl.") ¶ 4.)  RadioShack has not
explained just when it adopted this policy, although it is apparent that it was triggered
by the transition to WorkBrain.

<u>4. RadioShack's timekeeping and payroll policies and practices.</u>

For the entire proposed class period, some RadioShack stores used a computer
system (*i.e.*, "Workforce Management," of which "WorkBrain" was one feature), some
used a paper-based system, and still others used both.  As of February 2006, some
stores continued to use paper timesheets and some stores used WorkBrain.  (*See*
Schultz Decl. ¶ 18 & Ex. A (separate scheduling instructions for stores that use paper
timesheets and "Workforce Management").)  RadioShack has not explained when

---

[5] This shift is most peculiar, particularly because counsel's explanation at the hearing was
consistent with the company memo he had filed as evidence (Schultz Decl., Ex. 2B) and with the legal
authorities he had cited to justify the company's minimum wage-based policy regarding payment for
split shifts.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

WorkBrain was implemented and in what stores. In addition to its somewhat varying in-store practices, RadioShack also utilizes WorkBrain in district offices, where the Payroll Department is located.

RadioShack's Payroll Department incorporates the split shift and reporting time pay policies into WorkBrain. RadioShack programs its "Pay Rules" into WorkBrain. (Franks Supp. Decl. ¶ 2.) Some of the relevant WorkBrain Pay Rules are entitled "scheduled guarantee," "unscheduled guarantee" and "split shift premium." (Pls.' Responses to Supplemental Questions, Ex. 2.) WorkBrain automatically calculates an employee's wages, including any split shift premiums or reporting time pay, based on an employee's documented hours. (Schultz Decl. ¶ 21; Franks Supp. Decl. ¶ 5). The WorkBrain software automatically adds an additional hour for a split shift. (Franks Decl. ¶ 4.) Similarly, if WorkBrain receives a total of one hour of work, it will inform Payroll to pay the employee for two hours because RadioShack guarantees two hours of pay. (Franks Decl. ¶ 2; Schultz Decl. ¶ 20.)

Prior to WorkBrain, it was the store manager's responsibility to inform Payroll of the number of hours of pay that the employee should receive. (Declaration of Lance Franks ISO RadioShack's Response to Court's Minute Order ("Franks Decl.") ¶ 3; Schultz Dep. 37:8-38:14)

Store employees are required to clock in and clock out, using either paper time cards or the computer system. (Schultz Decl., Ex. 2A at 115.) Every week, store managers send a payroll report that contains the total hours that each employee worked on each day to the Payroll Department at the district office; the payroll report does not show the clock-in and clock-out times, a point that RadioShack emphasizes. (Schultz Decl., Ex. 2A at 119-20; Schultz Supp. Decl. ¶ 7; Simpson Decl. ¶ 2.) RadioShack has not clearly indicated whether it has any records, such as computerized records, that indicate the clock-in and clock-out times. Although RadioShack has a written split shift policy and claims that it pays the premium whenever an employee works a split shift, it has not explained how it could do so unless it had information presumably showing clock-in and clock-out times.

### 5. Summary of the evidence.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

At this stage in the litigation, the Court must only determine whether the plaintiffs have proffered enough evidence to meet the requirements of Rule 23; the Court need not weigh the persuasiveness of conflicting or competing evidence. *See Staton, et al. v. Boeing Company*, 327 F.3d 938, 954 (9th Cir. 2003). Taken together, the evidence submitted on this motion suggests:

(1) RadioShack has a uniform policy applicable in all California stores concerning reporting time pay and split shift premiums, although some of its specific policies regarding minimum shifts and meetings changed in 2005 and its split shift payment policy may have changed recently;

(2) the duration of sales associates' shifts varied;

(3) sales associates and store managers attended Saturday morning meetings, which were held weekly or at less frequent intervals, and which lasted from one to three hours;

(4) sales associates and store managers attended district office training meetings, which were held monthly or at less frequent intervals, and which lasted from one to five hours;

(5) these meetings were mandatory for sales associates if the store manager decided they should attend, although not every employee actually attended;

(6) employees generally clocked in and out when they attended these meetings, just as they clock in and clock out for their shifts;

(7) RadioShack's current policy is to pay for one additional hour when an employee works a split shift;

(8) store managers are responsible for tallying and reporting total hours worked;

(9) at present, timekeeping is managed through and compensation is computed by a centralized computer program called "WorkBrain;"

(10) before WorkBrain, managers were responsible for informing Payroll of the total hours of pay an employee should receive, in accordance with the company's policies regarding split shifts and minimum shifts; and

(13) WorkBrain was implemented at different times at different stores. (The record does not show whether it is now available at all stores.)

## B.    Rule 23(a) Requirements

RadioShack does not dispute that the numerosity and commonality requirements have been met. Plaintiffs estimate that over 15,000 employees worked in

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

RadioShack's 550 California stores from 2003 to 2007. There is at least one significant issue common to them: whether RadioShack's stated policies complied with California's reporting time and split shift regulations. What RadioShack does contest is whether Plaintiffs have met their burden of establishing typicality and adequacy.

### 1. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508 (9th Cir.1992) (citation omitted). According to the Ninth Circuit, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (quotation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted). "[C]lass certification is inappropriate where the putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Id.* (citing cases). The Ninth Circuit interprets the typicality requirement permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

All named plaintiffs assert either reporting time or split shift claims, or both. As to the split shift claim, only two named plaintiffs, Partida and T. Smith, attested to having worked split shifts. Therefore, only those two representatives could represent the members of a class asserting a split shift claim. As for reporting time pay, the injury that all named plaintiffs and the rest of the class allegedly suffered resulted from the same RadioShack policy for compensating employees who reported to meetings. Given the common policy, the fact that there have been variations in meetings attended, scheduled shifts, and actual hours of work does not defeat typicality. *See Dukes*, 509 F.3d at 1184 (different individual experiences did not make representatives' claims atypical, because their discrimination claim was based on an alleged common practice).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

Although Defendant does not dispute that the named plaintiffs themselves are members of the class they represent, it does contend that Plaintiffs have not satisfied the typicality requirement because three of the named plaintiffs (Kamar, Mitchell, and Smith) also allege claims for off-the-clock work and unpaid travel time, claims that are different from the class claims. However, Plaintiffs seek certification of the split shift and reporting time claims only. That some named plaintiffs have additional wage and hour claims does not make their interests any less aligned with, or less typical of, the interests of the class. *See* A. CONTE & H. NEWBERG, CLASS ACTIONS § 3:17 at 381-82 (4th ed. 2002) ("NEWBERG") (Rule 23(a) only requires that the class claims are fairly encompassed by the named plaintiffs' claims).

Because the proposed representatives have substantially similar claims as the rest of the class and because all class members allegedly have been injured by RadioShack's policies and course of conduct, the Court finds that Plaintiffs have met the requirement of typicality. *Hanon*, 976 F.2d at 508

### 2. Adequacy of representation.

The remaining prerequisite of Rule 23(a) is that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (internal quotation marks omitted). Plaintiffs have the initial burden to show facts to support a finding of adequacy. NEWBERG, § 7:24 at 76.

Defendants do not challenge the adequacy of Plaintiffs' counsel, but they do contest the adequacy of the named plaintiffs for a number of reasons: Solorio did not submit a declaration (Solorio submitted a declaration with the reply papers); Velasco, who was a store manager, did not have any reporting time pay or split shift premium claims; Kamar, Mitchell, and Smith have off-the-clock claims in addition to their class claims; and Partida admitted that he did not attend some Saturday morning meetings, although in his declaration he stated he was required to do so.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|----------|----------------------|------|-----------------|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

None of these objections materially affects the named plaintiffs' adequacy. As noted before, that some plaintiffs claim additional wage and hour violations does not necessarily impair their ability to represent the class. Partida is not disqualified due to lack of credibility, as Defendant contends. It was not inconsistent for him to testify that he was *required to* attend weekly Saturday meetings and that he *did not actually* attend certain of those meetings. (*See* Pls.' Exs., Ex. 16, Partida Decl. ¶ 7; Def't's Appendix of Evidence, Ex. 1D, Partida Dep. 66:10-30.) Finally, that Defendant believes store managers cannot have meritorious claims is irrelevant to Velasco's adequacy. To qualify as a class representative, one need not show that he indisputably has an individual right to recover. *See* NEWBERG, § 3:16 at 371-72 (plaintiff's ultimate ability to recover and unique defenses should not affect typicality). It is where a representative invites a defense unique to him that threatens to become the focus of the litigation that he would be subject to disqualification. *See Hanon*, 976 F.2d at 508 (internal quotation marks omitted) ("[C]lass certification is inappropriate where the putative class representative is subject to unique defenses which threaten to become the focus of the litigation."[6]

The Court finds that Plaintiffs have satisfied the requirements of Rule 23(a).

## C.    **Rule 23(b) Requirements**

In addition to meeting the conditions imposed by Rule 23(a), a putative class action plaintiff must also show that the action may be maintained under Fed. R. Civ. P. 23(b)(1), (2), or (3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Here, Plaintiffs propose certification pursuant to Rule 23(b)(1) and Rule 23(b)(3).

### 1. Plaintiffs do not qualify for certification under Rule 23(b)(1).

Rule 23(b)(1) authorizes a class action if Rule 23(a) is satisfied and if prosecuting separate actions by or against individual class members would

---

[6]There is no sworn evidence from the named plaintiffs regarding their willingness to serve, whether they have any conflicts of interest, and their understanding of their obligations as representatives. Although Defendant does not raise this point, separate declarations attesting to these matters will be a condition of their appointment as a class representative.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). It is difficult to satisfy these requirements. The Ninth Circuit has adopted an "extremely conservative view," requiring a finding that either "(1) rulings in separate actions would subject defendant to incompatible judgments requiring inconsistent conduct to comply with the judgment; or (2) a ruling in the first of a series of separate actions will "inescapably alter the substance of the rights of others having similar claims." *Mateo v. M/S Kiso*, 805 F. Supp. 761, 772 (N.D. Cal. 1991) (quoting *McDonnell Douglas Corp. v. U.S. Dist. Ct., C.D. Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975), *cert. denied sub nom.*, *Flanagan v. McDonnell Douglas Corp.*, 425 U.S. 911 (1976)).

In support of their request for certification of a Rule 23(b)(1) class, Plaintiffs merely recite the language of Rule 23(b)(1)(A). Hence, the Court will consider only whether "separate actions. . .would create a risk of inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for the [Defendant]." Fed. R. Civ. P. 23(b)(1)(A).

The Court is not persuaded by Plaintiffs' summary assertion that certification under Rule 23(b)(1)(A) is appropriate. Two considerations (which Plaintiffs ignored) militate against reliance on Rule 23(b)(1)(A). First, the Ninth Circuit has held that the mere possibility of varying monetary judgments or liability determinations in individual actions does not bring an action under Rule 23(b)(1)(A). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001). To construe this provision to authorize class actions where class members' entitlement to relief might differ would make virtually every case eligible for certification. NEWBERG, § 4:4 at 12-14. Second, Plaintiffs have not established that there is a risk that RadioShack will face incompatible standards of conduct arising from multiple injunctions. Any injunction that might issue in this case or in other cases would depend both on the court's interpretation of the IWC

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

regulations and on the facts.  The Court does not see how the mere *possibility* of multiple injunctions necessarily would impair RadioShack's ability to pursue a uniform course of conduct for all of its California stores.  *See* NEWBERG, § 4:4 at 17-18, *citing Contract Buyers League v. F & F Inv.*, 48 F.R.D. 7 (N.D. Ill. 1969) (noting that possible inconsistent adjudications would not lead to incompatible standards of conduct because "different results as to adjudications involving different individuals could be distinguished on the grounds of different facts," and that such variance does not preclude a finding of predominance under Rule 23(b)(3)).

In recent years, other courts in this and other districts have found certification of wage and hour disputes inappropriate under Rule 23(b)(1)(A).  *See, e.g., Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 907 (N.D. Iowa 2008);  *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 250 (C.D. Cal. 2006) (Selna, J.); *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 245 (C.D. Cal. 2006) (Fischer, J.), *rev'd on other grounds*, *Sepulveda v. Wal-Mart Stores Inc.*, 2008 WL 1868333 (9th Cir. 2008); *Wiegele v. Fedex Ground Package System, Inc.*, 2008 WL 410691, *6 (S.D. Cal. 2008); *Maddock v. KB Homes, Inc.*, 2007 WL 2221030, *6 (C.D. Cal. 2007) (Snyder, J.).[7]  The Court agrees with those courts and finds that certification under Rule 23(b)(1)(A) is inappropriate.

### 2. Plaintiffs do satisfy the requirements of Rule 23(b)(3).

To qualify for certification under this subsection, the class must satisfy two prerequisites: common questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). "Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Advisory Committee Notes, 39 F.R.D. 69, 102-103.
//

---

[7]The paltry and outdated authorities in favor of certifying wage and hour classes under Rule 23(b)(1)(A) provide little explanation for doing so other than that important commonalities existed among class members. *See Leyva v. Buley*, 125 F.R.D. 512, 517 (E.D. Wash. 1989); *Rothgeb v. Statts*, 56 F.R.D. 559, 565 (S.D. Ohio 1972).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

//
//

(a) The predominance requirement is satisfied.

The predominance inquiry "focuses on the relationship between the common and individual issues." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical. Rather, the predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162 (quoting *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231). Among the considerations that are central to this inquiry is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser*, 253 F.3d at 1189 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)).

When the claim is that an employer's policy and practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability. Class certification is usually appropriate where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established. *See, e.g.*, *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 527 F. Supp. 2d 1053, 1071 (N.D. Cal. 2007) (certifying class where plaintiffs demonstrated that Wells Fargo's policy and practice related to compensation was uniform for all putative class members). However, the existence of certain individualized or deviating facts will not preclude certification if most class members were subjected to a company policy in a way that gives rise to consistent liability or lack thereof. *See, e.g.*, *Kurihara v. Best Buy Co., Inc.*, 2007 WL 2501698, *9-10 (N.D. Cal. 2007) (predominance requirement satisfied where plaintiff provided substantial evidence of the existence of a company-wide policy even if in practice there are deviations from the policy).

"Because no precise test can determine whether common issues predominate, the

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

Court must pragmatically assess the entire action and the issues involved." *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489 (E.D. Cal. 2006). Other courts have embraced this practical approach. As the California Supreme Court recognized in an overtime wages class action,

> Predominance is a comparative concept, and "the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate." Individual issues do not render class certification inappropriate so long as such issues may effectively be managed.

*Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 334 (Cal. 2004) (internal citations omitted).

Plaintiffs assert that their theories and proof of liability as to every class member are identical. They rely heavily on their contention that reporting time and split shift violations are pervasive and result from Defendant's allegedly unlawful policies and practices for compensating employees for split shifts and reporting time. Plaintiffs list several legal and factual questions that they claim are common to the class:

1. Does RadioShack have a practice of requiring attendance at regular meetings?
2. If so, has RadioShack failed to pay reporting time wages to California employees who attended such meetings?
3. Does RadioShack have a practice of scheduling and requiring employees to work split-shifts while denying them payment of split-shift premiums?
4. Does RadioShack have a policy concerning payment for time spent at employee meetings that is in violation of California law regarding reporting time pay?
5. Do RadioShack's practices constitute an unfair business practice under California Business and Professions Code section 17200?

In response, RadioShack argues that these purported common issues are in fact predicated on factual circumstances that vary from employee to employee, depending on the actual practices in any given RadioShack store. In short, RadioShack's position is that there is not a predominance of common questions because whether it was obligated to pay reporting time pay and split shift premiums in the first place is dependent on a plethora of individualized facts. As a result, RadioShack contends, a class action cannot

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

proceed on the basis of representative testimony.

As explained below, the Court holds that Plaintiffs have satisfied the predominance requirements as to both claims.

(1) Common issues predominate in the analysis of liability for reporting time pay.

California's regulation for reporting time pay reads, in pertinent part:
Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage.

Cal. Code Regs., tit. 8, § 11040 (5)(A).

The testimony of RadioShack's vice president, Schultz, shows that there is support for Plaintiffs' allegation that RadioShack has a standardized policy for payment for attendance at meetings. (*See supra* pages 5-6.) In other words, RadioShack applied the same policy and formula to all employees in determining whether to add premium pay for reporting time. Moreover, those policies are documented in internal memos and are incorporated into computerized programs, as well as time cards and payment records. (*See, e.g.*, Pls.' Supp. Response, Ex. 2.)

As noted above, courts have certified Rule 23(b)(3) classes where the employers had standardized policies and procedures that were consistently implemented and proof of the claim would not require extensive individualized inquiries beyond the circumstances covered in those policies and procedures. *See, e.g.*, *Alba v. Papa John's USA, Inc.*, 2007 WL 953849, *10-13 (C.D. Cal. 2007) (Feess, J.) (emphasizing that whether store managers can be considered exempt does not require individualized inquiry because the company's central policies dictated their duties and tasks); *Kurihara*, 2007 WL 2501698 at *10 (holding that predominance is established where plaintiff "provided substantial evidence of existence of a company-wide policy whereby employees are

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

subject to inspections, and not compensated for the time spent on those inspections."). In the analogous context of overtime pay litigation, "courts have often found that common issues predominate where an employer treats the putative class members uniformly with respect to compensation, even where the party opposing class certification presents evidence of individualized variations." *In Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d at 1065.

Defendant does not dispute that it had standardized policies and procedures concerning compensation for meetings. Nonetheless, Defendant argues that predominance of common issues is absent because its liability for reporting time pay for employees' attendance at meetings depends on the following circumstances.

1. Whether the meeting was scheduled in advance.
2. The length of the meeting.
3. Whether the employee worked a shift on the same day as a meeting.
4. How much the employee was compensated on the day of a meeting.
5. Whether the meeting was mandatory or optional.
6. The employee's usual or scheduled work day.

Citing declarations from more than a dozen store managers, RadioShack stresses that these factors vary from store to store and employee to employee, because they are largely dependent on store managers' discretionary decisions regarding whether to conduct a store meeting, attendance at meetings, and the scheduling of shifts, among other matters. RadioShack's arguments are unpersuasive, for the following three reasons.

First, some of RadioShack's purported issues simply do not affect the cohesiveness of the class and the predominance inquiry. As RadioShack's counsel confirmed at the hearing, meetings were always scheduled in advance and were mandatory, although not all employees actually attended. In addition, the length of the meeting is not directly relevant to RadioShack's legal obligation under the reporting time regulation. RadioShack emphasizes that its records do not indicate whether the hours recorded for an employee included time spent at a meeting; those hours simply reflect time spent at work. To determine reporting time liability, however, it does not matter whether or not the hours were spent in a meeting or otherwise. All that matters for a *prima facie* claim are the elements in the regulation: the number of hours in the employee's "usual or scheduled

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

day's work" and the number of hours that he was actually "furnished" on any given day. Cal. Code Regs., tit. 8, § 11040 (5)(A). Thus, for example, if the usual hours were six and the actual hours on a given day were two, then there would be a *prima facie* basis to require reporting time pay.

Second, RadioShack's arguments regarding the variations in employees' hours are themselves based on common legal questions regarding the reporting time regulation. Its legal premise is that the law requires reporting time pay only if an employee was "furnished with less than half of [his] usual or scheduled day's work." According to RadioShack, therefore, it does not owe reporting time pay for any meeting because, first, no employee has a "usual" day's work, and, second, meetings are always scheduled in advance. So long as he was given advance notice, therefore, if an employee reported to work only for a meeting, then he has been furnished his "scheduled day's work," even if the meeting lasted only one hour. This interpretation, Plaintiffs respond, lacks common sense and is wrong, because each employee *does* have a "usual" day's work, even if it must be calculated as an average or median, and each employee also has a "scheduled day's work." RadioShack store managers work out a daily schedule with their employees in advance that takes into account the time they are expected to be at a meeting. (Schultz Decl. ¶ 7 & Ex. 2A.) Given this policy and practice, for each employee there must be a "usual or scheduled day's work." In addition, Plaintiffs argue, the purpose of reporting time pay is not solely to ensure proper notice and scheduling, as Defendants contend, but also to compensate employees for the trouble of reporting to work without an opportunity to work a minimum number of hours relative to their usual workday.

On this motion, the Court will not resolve the parties' disputes concerning the meaning of the phrase "usual or scheduled day's work" in the regulation. Whether the reporting time regulation applies to meetings that are scheduled in advance and whether it applies when an employee's hours varied day to day are common questions of law. Those questions of law and the fact that RadioShack had common policies and procedures concerning meetings for all stores and employees persuade the Court that the reporting time pay claim involves predominantly common questions.

Third, RadioShack has not persuaded the Court that individual variations in employee's hours and compensation would overwhelm the litigation with individualized determinations. The reporting time regulation only requires a premium payment *if the*

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

employee is furnished less than half his usual or scheduled day's work. There is a precise cut-off for liability: half of the employee's usual or scheduled day's work. If an employee reported to a meeting, whether reporting time pay is owed depends on his total hours worked that day (the meeting plus any other hours) and whether his total hours amounted to less than half of his usual or scheduled day's work. Contrary to Plaintiffs' suggestions, the Court cannot simply presume an eight hour workday or compute the average of all class members' actual workdays. RadioShack schedules its employees for specific hours on each day and employees do not all have the same workday, resulting in differences in whether the regulation would be applicable to them. Nevertheless, to suggest (as RadioShack does) that every employee's hours and compensation is completely different from every other's is an exaggeration. Although RadioShack may have permitted shifts as short as two hours, for instance, it has not pointed to an actual employee who worked such short shifts. (The shortest shift that Plaintiffs' declarants worked was four hours long.) Meetings ranged from under one hour to up to four hours. In both respects, there will not be so many variations as to require individualized testimony from 15,000 putative class members.

Methods of common proof could be devised that would accurately assess RadioShack's reporting time obligations under the finite differing schedules that its employees could have had, without sacrificing the precision required by the reporting time regulation. As Plaintiffs correctly observe, procedural tools such as mini-proceedings or surveys of a randomly selected sample of claimants are available for the efficient resolution of individual issues of eligibility and damages. For example, experts could perform a statistical sampling based on the relevant variables, *i.e.*, duration of usual workday and duration of meetings, and come to a conclusion as to how many employees in the class experienced a given combination of variables.

In all wage and hour cases, liability and damages depend on the employees' actual wages and hours. Differences in wages and hours often do not prevent class certification, if there are ways to avoid testimony by every class member. Indeed, the Ninth Circuit has suggested that variation in actual wages is a relatively easy issue, where the employer has payroll records that would indicate the actual compensation that each employee received. *See Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (noting that individualized issue of amount earned in tips is easy one where employer has detailed written records of the tips

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | | Date | October 8, 2008 |
|---|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | | |

employees earned in the past).  Such recurring variations have not deterred courts from finding a predominance of common issues under Rule 23(b)(3), even where the defendant has not maintained the pertinent records that plaintiffs would need to prove their claim. *See id.*; *In Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d at 1068 (finding predominance of common questions in overtime pay case based on employer's uniform policies, despite the lack of records of the hours that plaintiffs worked); *Gonzalez v. Nicholas Zito Racing Stable Inc.*, 2008 WL 941643, *7 (E.D.N.Y. 2008) (some degree of factual variation in hours and pay among the class members is "inevitable" and does not defeat predominance).

In contrast, courts have been more hesitant to certify wage and hour classes where **key** facts could not be discerned through routine business records, such as where claims to overtime compensation depended on employees' actual duties which differed among employees within the class, or where claims to unpaid meal and rest break premiums depended on whether employees actually took the mandated break.  *See, e.g.*, *Jimenez*, 238 F.R.D. at 251 (dealing with need to determine individually employees' non-exempt status); *Brown v. Federal Express Corp.*, 249 F.R.D. 580, 587 (C.D. Cal. 2008) (Fischer, J.) (dealing with need to determine individually whether FedEx's policies actually prevented employees from taking required breaks).

In this case, RadioShack does not claim to lack records of the daily compensation and hours worked of those employees who would be in the class, for all years in the class. Indeed, RadioShack has suggested that such records are available.  (*See* Tr., June 30, 2008, at 35:18-20 ("What the payroll records show is the total number of hours that the manager is requesting that Mary get paid for."); Simpson Decl. ¶¶ 4-5.)  For example, RadioShack's Payroll Assistant Controller, Cathy Simpson, compiled data to determine the average daily hours worked by part-time employees in California in 2007.  It took her eight hours to do and it would take approximately that long for each year.  (Simpson Decl. ¶¶ 4-5.)  Her testimony suggests that RadioShack would have sufficient records of the hours its employees worked for all the years in question, to enable a class-wide determination of how many employees had usual or scheduled workdays of a given length.

However, RadioShack does argue that it lacks the daily or weekly schedules that store managers generate for all the years within the class period.  These schedules are

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

maintained for a period of time (at the stores, not at the district offices or at Payroll), but may not be available for all the years in the class period.  Without those schedules, how could it be determined whether RadioShack's total hours data reflect only the hours actually worked, or also include additional hours of pay that are mandated by the reporting time regulation?

On the limited record before the Court, it appears that the only situation in which this data may not be sufficient is where store managers were responsible for incorporating the additional hours representing the reporting time premium into the total number of hours of compensation.  If RadioShack's records only contain the total hours reported by store managers, then it seems unlikely that one could discern which of those hours represent time actually worked and which represent the additional hours that store managers added to trigger premium payments.  In contrast, under the system where WorkBrain performed the computations based on actual hours, it should be discernible from payroll records how many hours were actually worked and how many hours were added as premiums.

Although the gap resulting from data that merely contain total hours reported by store managers may pose some difficulty for the subset of potential class members whose stores used that system, common proof of liability may still be available, if Plaintiffs can show a common policy or practice that was applied at the time of those class members' claims.  For example, assume that RadioShack's policy of paying two hours of pay for attendance at a Saturday meeting lasting less than two hours applied during the time period of a class member's claim.  If the store manager followed that policy and reported two hours, even though the meeting was shorter, then RadioShack's payroll record would show two hours of work and two hours of pay.  Based on that policy and the payroll record, the amount of underpayment, if any, could then be determined.

Finally, it bears noting that California law requires employers to maintain timekeeping records, including the start and end times for each work period, for at least three years.  Cal. Code Regs., tit. 8, § 11040 (7).  If RadioShack did not have the required records for a claimant, then the claimant would have a relatively light burden of producing evidence of his hours before the burden shifts to the employer to produce specific evidence refuting the employee's claim.  *See Bell v. Farmers Ins. Exchange*, 115 Cal.App.4th 715, 748 (Cal. Ct. App. 2004) (citing *Anderson v. Mt. Clemens Pottery Co.*,

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

325 U.S. 680, 686-87 (1946) for the rule that courts may award damages to an employee based on employees' approximation of hours, if employer fails to produce records showing the precise hours). This burden-shifting scheme aims to avoid "penaliz[ing]the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work," where the employer fails to keep proper records. *Mt. Clemens*, 328 U.S. at 687. Federal courts have applied *Mt. Clemens* by, for example, permitting representative testimony of a small percentage of the employees, thereby "reliev[ing] some employees of the procedural necessity of making individual proof." *Bell*, 115 Cal.App.4th at 748-49, 750 (citing numerous examples of procedural devices in federal courts). RadioShack's representations about its record keeping and payment practices have been unclear and inconsistent. The Court will not presume that it lacks the records that it is statutorily required to maintain in determining whether or not common proof of Plaintiffs' claims is possible.

The evidence is sufficient to satisfy Plaintiffs' burden of showing that common issues predominate as to the reporting time claim. There are no individual issues of law. RadioShack admits that it had company-wide policies and procedures regarding compensation for meetings that were consistently applied. It has not established that there are any dispositive issues that must be resolved on an individual employee-by- employee, time sheet-by-time sheet basis. RadioShack's defenses also present significant common issues of law regarding the prerequisites for a reporting time claim, including: (1) Whether the sole purpose of the regulation is to ensure adequate notice in the scheduling of work hours; and (2) whether an employer is liable if its employee does not have a "usual" schedule but the employer gave employees advance notice of scheduled meetings. Thus, the Court finds that the common questions of fact and law overshadow the individual questions.

> (2) Common questions predominate in the analysis of liability for split shift premiums.

For many of the same reasons, Plaintiffs also satisfy the predominance requirement as to their split shift claim.

California's split shift premium regulation states:

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

> When an employee works a split shift, one (1) hour's pay at the minimum
> wage shall be paid in addition to the minimum wage for that workday,
> except when the employee resides at the place of employment.

Cal. Code Regs., tit. 8, § 11040(4)(C). A "split shift" means "a work schedule, which is interrupted by non-paid, non-working periods established by the employer, other than bona fide rest or meal periods." Cal. Code Regs., tit. 8, § 11040(2)(Q).

The evidence is adequate to conclude that RadioShack had a standardized split shift policy under which it consistently did not add a split shift premium to the wages of employees who worked a split shift. (*See* Schultz Decl., Ex. 2B.) Its written policy, which applied to all employees, stated that employees may not receive additional compensation for a split shift after commissions are accounted for. (*Id.*) A reasonable inference from the evidence and arguments RadioShack presented is that it did not pay the premium to employees who earned at least the minimum wage when their commissions were included in their earnings, given that RadioShack evidently believed this practice complied with the law. RadioShack does claim now that it now adds the premium whenever the employee's timesheets shows a split shift.

Despite those core common issues, RadioShack contends that Rule 23(b)(3) cannot be satisfied because individualized determinations of the following factual questions are necessary to determine its liability:

1. Whether the employee worked two distinct shifts in the same day that would qualify as a split shift under the regulation.
2. Whether the employee requested a split shift or worked a split shift for a personal reason, such as a doctor's appointment.
3. Whether on the day of the split shift the employee was compensated in an amount equal to what he would have earned under the minimum wage plus an additional hour at the minimum wage.

As explained below, none of these issues defeats predominance.

RadioShack asserts conclusorily that whether the employee worked two distinct shifts is an individualized question not susceptible to common proof. It is not clear what

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

RadioShack means by that assertion.  The lengths of employees' shifts and the intervals between them may vary, but that is not material to the analysis of whether a split shift premium is owed.  The fact that class members may to have performed split shifts on differing occasions bears not on the predominance of common questions of liability, but on the amount of damages.  Moreover, it is undisputed that split shifts did occur.  RadioShack's own evidence indicates that its managers did occasionally schedule split shifts, which RadioShack's written policy recognized as split shifts covered by the IWC regulation.  The only question is whether any given employee actually worked a claimed split shift and how he will prove it, a question that goes to eligibility for inclusion in the class.  As discussed above, for the purposes of this motion the Court may presume that statutorily required records of precise hours worked are available.  Even if they are not, employees may be able to establish their eligibility to recover based on RadioShack's common policy and representative testimony.  *See Bell*, 115 Cal.App.4th at 748 (noting that "federal courts have consistently granted back wages to nontestifying employees on the basis of a pattern or practice adduced from the testimony of other employees within their job category.").  For these reasons, the RadioShack's vague contention concerning whether class members worked two distinct shifts is unpersuasive.

As to the second category of purported individualized fact questions, RadioShack relies on the language of the regulation and one California case to argue that if a split shift was instituted at the employee's request for personal reasons, the employer is not required to pay a split shift premium.  The regulation provides that a "split shift" is a kind of "work schedule. . . *established by the employer*."  Cal. Code Regs., tit. 8, § 11040(2)(Q) (emphasis added).  According to RadioShack, if an employee requested the split shift, it is by definition not "established by the employer."[8]  Although the argument may be

---

[8]The one case RadioShack cites, *Leighton v. Old Heidelberg, Ltd.*, 219 Cal.App.3d 1062 (Cal. Ct. App. 1990) dealt with a contractual waiver of the premium.  The question before the court was whether there was a triable issue whether the employee's written waiver was signed under coercion by the employer.  *Id.* at 1072.  Holding that there was not, the court assumed without discussion that the premium may be waived by a valid written waiver.  *See id.* at 1074.  Here, there is no evidence of contractual waivers of the split shift premium and no way to determine from RadioShack's timekeeping records the precise reason(s) for any given split shift, as RadioShack admits.  (Collins Decl. ¶ 12.)  At most, *Leighton* suggests that a California court *might* determine that a split shift was not "established by the employer" if the employee executed a valid and enforceable written waiver.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

supported by the language of the regulation, it is misdirected because RadioShack has taken pains to emphasize that its store managers establish employees' schedules based on both the company's needs and the employee's availability.   (*See, e.g.*, Schultz Decl. ¶¶ 11-12 & Ex. 2A at 115).   Thus, the store manager always has the discretion to approve or deny an employee's request, and even if the request was granted, the split shift schedule was nevertheless "established by the employer."

In any event, this issue raises a legal question on the merits, one that is common to the class: Whether and under what circumstances RadioShack would not be required to pay a split shift premium.  RadioShack has not shown that individualized inquiries into whether the employee requested a split shift and the reason for the split shift will be necessary.

Finally, the third purported individualized fact question to which  RadioShack points is the amount of employees' actual compensation.  That fact also does not defeat predominance.  The extent, if any, to which actual compensation is even relevant depends on whether RadioShack prevails on what even it concedes is a common legal question. RadioShack's position is that there can be no split shift liability unless the worker's compensation was less than her total hours worked multiplied by the minimum wage plus one hour of additional pay at the minimum wage.  (Schultz Decl., Ex. 2B; Tr., June 30, 2008, at 10:6-11.)  If the employee's actual compensation was more than that amount -- because, for example, her base pay exceeded the minimum wage -- then in RadioShack's view the employee would already have effectively received the premium required by law. Put differently, RadioShack contends that the amount that the employee receives above the minimum wage, whether it comes from her base pay or commissions (or "spiffs," which are bonuses for selling particular products), can be credited to RadioShack's obligation to pay a split shift premium.  To this legal argument, Plaintiffs respond that at least one hour of additional pay at the minimum wage must be provided on top of the employees' actual earnings, regardless of whether the total actual earnings exceeded the minimum wage.  This legal dispute militates in favor of class certification, since it must be resolved for the class as a whole.  Moreover, even if individualized inquiries into class members' actual wages were necessary, they would be relatively manageable because RadioShack's payroll records contains that data.

For the foregoing reasons, the Court finds that the common questions are

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

sufficiently predominant to entitle Plaintiffs to pursue their split shift claim through a class action.

> (d) The class action is a superior mechanism for resolution of both claims.

The superiority inquiry requires consideration of whether the objectives of the particular class action procedure will be achieved in the particular case and often entails a comparison of alternative mechanisms of dispute resolution. *Hanlon*, 150 F.3d at 1023. Rule 23(b)(3) specifies four nonexclusive factors that are "pertinent" to a determination of whether class certification is the superior method. Fed. R. Civ. P. 23(b)(3). They are: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. *Id.*

The parties do not address the first three factors listed in Rule 23(b)(3) or alternative methods of dispute resolution. The Court is not aware of any interest among class members in individually prosecuting separate actions, nor of any reason why these claims should not be concentrated in this District Court.

Plaintiffs argue that class treatment is the superior mechanism because all members of the class have a mutual interest in proving RadioShack's liability and because the individual damages are not high enough for class members to pursue individually. Plaintiffs also contend that because RadioShack possesses records of the employees' hours worked and compensation, a class action would be manageable.

The Court agrees. Employer practices and policies with regard to wages and hours often have an impact on large numbers of workers in ways that are sufficiently similar to make class-based resolution appropriate and efficient. *See, e.g.*, *Lerwill v. Inflight Motion Pictures Inc.*, 582 F.2d 507, 512-13 (9th Cir. 1978) (upholding the trial court's decision to certify the class of technicians seeking overtime pay and finding that "[n]umerous individual actions would be expensive and time-consuming . . . ."). On the record currently before the Court and for the reasons discussed above, it does appear efficient and

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|
| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* | | |

manageable to litigate the reporting time and split shift claims as a class action. The most significant issues that determine liability for the reporting time and split shift claims are susceptible to class-wide proof, as they arise from RadioShack's uniform policies and procedures or can be determined without individual testimony from class members. *See Hanlon*, 150 F.3d at 1022. If necessary, this Court will entertain arguments for the use of particular procedural tools at a later stage in this litigation.[9]

Importantly, the class action mechanism would enable the collective vindication of the rights of RadioShack employees whose claims are not worth litigating in individual actions. *See Amchem Prods.*, 521 U.S. at 617. If a class were not certified in this case, the alternative would be either numerous individual suits or, more likely, the abandonment of individual claims.

RadioShack's arguments do not directly address the superiority of the class action device. It contends that a class action is not a superior mechanism because the proposed class sweeps in employees who are not eligible to recover and the class cannot be ascertained without extensive individualized inquiry. That contention goes to the merits of individual claims and to the parties' legal theories, which the Court addressed above.

RadioShack makes the same point about sweeping in employees who do not have meritorious claims under the heading of "ascertainability of the class." For example, it argues that Store Managers cannot be in the class, because whether they attend meetings or take a split shift is their choice, because they earn more than minimum wage, and because the district meetings they attend are always longer than four hours and therefore can never lead to reporting time pay. Again, this amounts to arguing that store managers cannot be in the class because they have no right to these payments. That argument is not appropriate on this motion.

## IV.   CONCLUSION

---

[9]Should it become clear at a later stage that common proof is not possible for some category of employees or some year within the class period, the Court has the authority to decertify or modify the class as necessary. *See, e.g.*, *Marlo v. United Parcel Service, Inc.*, 251 F.R.D.476, *7-11 (C.D. Cal. 2008).

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2252 AHM (AJWx) | Date | October 8, 2008 |
|---|---|---|---|

| Title | SPIRO KAMAR, *et al.* v. RADIO SHACK CORPORATION, *et al.* |
|---|---|

For the foregoing reasons, the Court finds that Plaintiffs have satisfied the Rule 23(a) and Rule 23(b)(3) requirements.  Accordingly, Plaintiffs' motion is GRANTED.  The class certified herein is defined as: "All California employees of defendant paid on an hourly basis as nonexempt employees for the period of March 2003 to the present who (a) were instructed to and attended a Saturday store meeting or district office meeting without receiving the full amount of mandated premium pay, or (b) worked a split shift schedule without receiving the full amount of mandated premium pay, or (c) fit into both (a) and (b)."

By not later than October 29, 2008 Plaintiffs shall file declarations attesting to their qualifications to serve as representatives and lodge a proposed order consistent with this ruling and with practice under Rule 23.

_____  :  _____

Initials of Preparer    _____